**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

| | |
|---|---|
| **ALAN LANE HICKS,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | **CIVIL ACTION NO. 3:21-00618** |
| **v.** ) | |
| ) | |
| **DONNIE AMES, Superintendent,** ) | |
| ) | |
| **Respondent.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Respondent's "Motion to Dismiss for Failure to Exhaust State Remedies" (Document No. 28), filed on July 20, 2022. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's "Motion to Dismiss for Failure to Exhaust State Remedies" (Document No. 28).

**PROCEDURE AND FACTS**

1.    **Criminal Action Nos. 86-F-59 and 88-F-2:**

On November 14, 1986, the Grand Jury of Putnam County, West Virginia, returned an Indictment against Petitioner charging him with one count of murder in the first degree (Case No. 86-F-59). (Document No. 18-1.) On March 7, 1988, the Grand Jury of Putnam County, West Virginia, returned an Indictment against Petitioner charging with one count of aggravated robbery and one count of conspiracy to commit murder (Case No. 88-F-2). (Document No. 18-2.) On

September 12, 1988, Petitioner's jury trial concerning both Indictments began. (Document Nos. 18-3 and 18-4.) At the completion of the State's case-in-chief on September 13, 1988, Petitioner moved for a judgment of acquittal on all charges. (Document No. 18-3.) The Circuit Court granted Petitioner's motion as to the charge of aggravated robbery, but denied the motion as to charges of first degree murder, conspiracy to commit murder, and the lesser included offense of grand larceny. (Id.) On September 14, 1988, the jury trial resumed and Petitioner offered no witnesses. (Id.) Following deliberation, the jury convicted Petitioner of first degree murder, conspiracy to commit murder, and the lesser included offense of grand larceny. (Id.) The jury did not recommend mercy concerning Petitioner's conviction for first degree murder. (Id.) October 25, 1988, the Circuit Court sentenced Petitioner to life imprisonment without the possibility of parole for his first degree murder conviction, an indeterminate sentence of not less than one (1) year nor more than five (5) years of imprisonment for his conviction of conspiracy to commit murder, and an indeterminate sentence of not less than one (1) year nor more than ten (10) years of imprisonment for his conviction of grand larceny. (Document No. 18-5.) The above sentences were ordered to run concurrently. (Id.)

On October 26, 1989, Petitioner, by counsel, filed his direct appeal with the Supreme Court of Appeals of West Virginia ("SCAWV"). (Document No. 28-3.) As grounds for error, Petitioner asserted the following:

A.   The trial court's refusal to instruct the jury on self-defense denied the defendant his constitutional right to a fair trial.

B.   The Putnam County Circuit Court was without jurisdiction to try the defendant for the crime of conspiracy to commit the murder of Pedro Gaona.

C.   The Prosecutor's failure to provide evidence to support allegations made in his opening statement denied the defendant a fair trial.

(Id.) By Order entered on January 10, 1990, the SCAWV refused the appeal. (Document No. 28-

4.) Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. (Document No. 1, p. 2.)

2.    <u>**Rule 35 Motion**</u>:

On February 23, 1989, Petitioner filed a "Motion for Reduction of Life Without Mercy Sentence Under Rule 35." (Document No. 18-6.) Petitioner did not specify if he was requesting relief under subsection (a) or (b) of Rule 35 of the West Virginia Rules of Criminal Procedure. (<u>Id.</u>) Petitioner, however, requested that the Circuit Court enter an order "reducing his sentence of life without [mercy] sentence to life with mercy, or to an indeterminate term of not less than five years nor more than eighteen years, and that the Court grant any other relief it seems just and appropriate." (<u>Id.</u>) In support, Petitioner first stated that he had no prior criminal record. (<u>Id.</u>) Second, Petitioner argued that the evidence revealed that the victim's death "amounted to no more than second degree murder" and "the jury was without sufficient legal information to impose a sentence of life without mercy upon the Petitioner." (<u>Id.</u>) Thus, Petitioner claimed that the "jury acted illegally by not considering certain mitigating factors prior to making its recommendation." (<u>Id.</u>) Petitioner argued if the jury had been aware of the fact that Petitioner lacked a prior criminal record, the jury would have "most likely" recommended mercy. (<u>Id.</u>) Finally, Petitioner asserted that the Circuit Court "has vested in it the authority and power to reduce this Petitioner's sentence to any term it deems fair and appropriate." (<u>Id.</u>)

After the Circuit Court failed to rule upon the foregoing Motion for a number of years, Petitioner filed Petitions for Writ of Mandamus with the SCAWV to compel the Circuit Court to rule upon the Rule 35 Motion. (Docket Nos. 13-0278 and 18-0435). <u>See</u> <u>West Virginia v. Hicks</u>, 2020 WL 201222 (W. Va. Jan. 13, 2020); (Document No. 18-4.) On January 18, 2019, the Circuit Court entered its Order Denying Rule 35 Motion. (Document No. 18-15.) The Circuit Court

determined that Petitioner's Motion for Reduction of Sentence was filed pursuant to Rule 35(b) and the Court lack jurisdiction to consider it because the Motion was untimely. (<u>Id.</u>) The Circuit Court further found that even if it had jurisdiction to review of the merits of the Motion, "a reduction or modification of the [Petitioner's] sentence [would be] inappropriate" and "would unduly depreciate the seriousness of the [Petitioner's] crimes." (<u>Id.</u>)

On February 13, 2019, Petitioner filed his notice of appeal from the Circuit Court's Order denying his Rule 35 Motion for Reduction of Sentence. (Document No. 18-18.) Petitioner argued that his sentence was illegal and that it was imposed in an illegal manner. (<u>Id.</u>) By Scheduling Order entered on February 15, 2019, the SCAWV instructed Petitioner that "the assignment of error . . . must relate only to the circuit court's decision not to reduce the Petitioner's sentence because Rule 35(b) is not a mechanism by which defendants may challenge their convictions and/or the validity of their sentencing." (Document Nos. 18-17 and 28-16.) On May 1, 2019, Petitioner, acting *pro se*, filed his Petition for Appeal arguing he was entitled to a correction of an illegal sentence and a correction of a sentence imposed in an illegal manner. (Document No. 28-15.) By Summary Response filed on June 17, 2019, the State argued that the Circuit Court properly denied Petitioner's Motion for Reduction of Sentence because it was filed outside the 120 day limitation period provided under Rule 35(b). (Document Nos. 18-19 and 28-17.) Petitioner filed a Reply Brief. (Document Nos. 18-20 and 28-18.) On January 13, 2020, the SCAWV affirmed the Circuit Court's denial of Petitioner's Motion for Reduction of Sentence. <u>Hicks</u>, 2020 WL 201222 * at 4; (Document Nos. 18-4 and 28-19.) The SCAWV construed Petitioner's Motion as one under Rule 35(b) and upheld the Circuit Court's determination that the Circuit Court lacked jurisdiction to entertain Petitioner's Rule 35(b) motion because it was filed outside the 120-day time period. (<u>Id.</u>) On February 6, 2020, Petitioner filed Petition for Rehearing with the SCAWV. (Document

No. 23-1, pp. 100 – 104.) On April 20, 2020, the SCAWV denied Petitioner's Petition for Rehearing. (Id., p. 105.) On October 1, 2020, Petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court. (Document No. 28-20.) On November 16, 2020, the United States Supreme Court denied Petitioner's Petition for Writ of Certiorari. (Document No. 28-21.)

### 3.    State *Habeas* Petition (Case No. 97-C-369):

On November 20, 1997, Petitioner, acting *pro se*, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Putnam County. (Document No. 18-8, 18-9, 28-5.); Hicks v. Trent, Case No. 97-C-369 (Cir. Ct. Putnam Co.). As grounds for relief, Petitioner asserted the following:

1.    Following an acquittal on the charge of robbery, the State was foreclosed by the principle of collateral estoppel, as embodied in the United States Constitution Fifth Amendment guarantee against double jeopardy from convicting the Petitioner of the murder of Pedro Gaoea, therefore, the trial court erred in refusing to grant Petitioner's subsequent motion for acquittal of murder.

2.    Petitioner's constitutional rights were violated under the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution and Article Three, Section Five, Ten, and Fourteen of the West Virginia Constitution when the trial court refused to instruct the jury on self-defense.

3.    The State violated Petitioner's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution by failing to provide evidence to support allegations made in the opening statement; By the prosecutor making comments during closing arguments that were designed to raise the passions of the jury; and By the Judge's remark regarding a state witnesses testimony "that would have to have happened."

4.    The Court instructed that "malice and intent may be inferred by the jury from the defendant's use of a deadly weapon, to wit: a pistol," thereby relieving the State of the responsibility of proving all elements of the crime in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

5.    The Court violated Petitioner's due process rights under the United States Constitution, Amendment Fourteen, by erroneously instructing on malice and premeditation, thereby obliterating the primary distinction between homicide and murder.

5

6.      The failure to have a direct instruction on the issue of "mercy," coupled with trial counsel's failure to present any mitigating evidence was a violation of the Sixth and Fourteenth Amendment to the United States Constitution.

(Document No. 28-5.) Subsequently, Petitioner filed a Motion for Appointment of *Habeas* Counsel and the Circuit Court appointed Shawn D. Bayliss as *habeas* counsel on September 21, 2012. (Document No. 28-8.) By Orders entered on January 16, 2013, April 19, 2013, and July 26, 2013, the Circuit Court granted Petitioner extensions of time to file his Amended *Habeas* Petition. (Id.) Subsequently, Petitioner filed a complaint against Mr. Bayliss with the West Virginia State Bar. (Document No. 36, p. 2.) By Order entered on September 5, 2013, the Circuit Court granted Mr. Bayliss' motion to withdraw as counsel and appointed C. Dascoli, Jr., as new *habeas* counsel to represent Petitioner. (Document No. 28-8.) On May 3, 2016, Mr. Dascoli was relieved as counsel and Mr. Duane Rosenlieb was appointed as *habeas* counsel. (Id.) On January 20, 2017, Petitioner, acting *pro se*, filed his Amended *Habeas* Petition. (Document Nos. 28-6 and 28-7.) As grounds for relief, Petitioner asserted the following:

1.      Petitioner's conviction for murder, following his acquittal of aggravated robbery, violated his right under the Fifth and Fourteenth Amendments of the United States Constitution and West Virginia Constitution Article Three, Sections Five and Ten.

2.      The Court's failure to grant a mistrial following the introduction of evidence not revealed in discovery violated the Petitioner's rights under the United States Constitution, Amendments Six and Fourteen, and West Virginia Constitution, Article 3, Section Ten.

3.      Petitioner's rights were violated under the United States Constitution, Amendments Six and Fourteen, and West Virginia Constitution, Article Three, Section Ten and Fourteen, when the Court refused Petitioner's offered self-defense instruction.

4.      The Petitioner's rights were violated when the Court granted an instruction allowing the jury to infer malice from the use of a deadly weapon in a case containing a bar against evidence of a firearm, in violation of Amendments Five, Six, and Fourteen of the United States Constitution and West Virginia Constitution, Article Three, Section Five and Section Ten.

6

5.    The Court's failure to provide verdict forms that distinguished the theory of murder relied upon for conviction or to instruct the jury as to what theories were available, violated Petitioner's rights under the United States Constitution, Amendments Five, Six, and Fourteen, and West Virginia Constitution, Article 3, § 10.

6.    Ineffective assistance of trial counsel violated Petitioner's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and Article 3, Sections 5, 10, and 14 of the West Virginia Constitution.

(Id.) On March 27, 2017, Petitioner filed a Motion to Proceed *Pro Se* and Remove Appointed Counsel. (Document Nos. 28-8 and 33-4.) The Circuit Court conducted a hearing upon the Motion on May 24, 2017. (Document Nos. 28-8 and 33-5.) After noting that Mr. Rosenlieb would be relieved as counsel and Petitioner's desire to move forward *pro se*, the Circuit Court stated that the Court questioned Petitioner's ability or the wisdom of Petitioner proceeding forward *pro se*. (Document No. 33-5.) Petitioner further informed the Court that "[i]f you're going to appoint a lawyer, I would ask that that be co-counsel. If not co-counsel, then not at all." (Id.) By Order entered on May 30, 2017, Mr. Rosenlieb was relieved as counsel and Petitioner's motion to proceed *pro se* was held in abeyance. (Document Nos. 28-8 and 33-6.) On July 13, 2017, Petitioner filed a motion for transcripts of the May 24, 2017 hearing. (Id.) The transcripts of the hearing conducted on May 24, 2017 were filed on January 17, 2019. (Id.)

On January 17, 2019, the Circuit Court appointed Carl Hostler as counsel to assist Petitioner with his Petition, scheduled a hearing for February 28, 2019, and directed that any Amended Petition must be filed by July 5, 2019. (Document No. 28-8, Document No. 28-13, p. 6, and Document No. 33-2.) The Circuit Court conducted a hearing via video conference on February 28, 2019. (Document No. 28-8.) By Order entered on March 19, 2019, the Circuit Court noted that the hearing was conducted as scheduled on February 28, 2019, with Plaintiff appearing via video

conference and Mr. Hostler appearing in person. (Document No. 33-3.) The Circuit Court noted that Plaintiff had filed an appeal with the SCAWV following the Court's denial of his Rule 35 Motion, that the Circuit Court was in receipt of the SCAWV's briefing schedule for the appeal, and that under Rule 28 the Circuit Court was without jurisdiction to enter further orders unless given leave to do so by the SCAWV thereby staying Petitioner's *habeas* proceedings. (Id.) The Circuit Court, however, noted that Petitioner indicated he wished to proceed before the Circuit Court under the January 17, 2019, Scheduling Order and that the proceedings not be stayed. (Id.) The Circuit Court, therefore, informed the parties that it would proceed with the timelines set forth in the January 17th Schedule Order unless the SCAWV issued an Order denying such. (Id.) On July 8, 2019, Petitioner, by counsel, filed a Motion for a Thirty Day Extension of Time concerning the filing of his Amended *Habeas* Petition. (Document Nos. 28-8 and 33-7.) In support, counsel stated that the extension of time was necessary due to the lack of a trail transcript in the Office of the Clerk of the Circuit Court of Putnam County. (Document No. 33-7.) Counsel, however, stated that it was "believed such transcript is in the possession of the WV Public Defenders' Service and counsel will make such arrangements as soon as possible." (Id.) Petitioner further admits that during a visit from Mr. Hostler," Petitioner "refused to hand over his entire file to a man he had just met." (Document No. 31, p. 5.) By Order entered on July 21, 2022, the Circuit Court continued the status hearing scheduled for July 22, 2022, due to a scheduling conflict. (Document No. 33-8.) On September 14, 2022, the Circuit Court conducted the Status Conference. (Document No. 36, p. 5.) During the Status Conference, the Circuit Court noted that Mr. Hoslter was no longer in private practice and appointed Jason T. Gain new *habeas* counsel. (Id.) On September 15, 2022, Petitioner filed a "Motion for Recusal of Prosecutor Mark A. Sorsaia." (Document No. 36-1, pp. 17 – 18.)

4.      **Petition for Writ of Mandamus (No. 13-0278):**

On March 15, 2013, Petitioner filed with the SCAWV a Petition for Writ of Mandamus. (Document Nos. 18-10, 18-11 and 28-10.) In his Petition, Petitioner requested that the SCAWV issue a writ of mandamus compelling the following: (1) The production of Petitioner's grand jury transcripts and a particular investigation report related to his underlying criminal actions (Case Nos. 86-F-59 and 88-F-2); (2) The Circuit Court to "appoint a competent attorney" regarding his pending State *habeas*; and (3) The Circuit Court to schedule a hearing on his Rule 35 Motion for Reduction of Sentence. (Document No. 28-10.) Petitioner further presented the following questions:

1.   Does the failure to produce the Investigation Report of Florida Detective P.L. Lingo, and the Grandy Jury Transcripts violate state and federal constitutional rights to due process of law?

2.   Does the failure to adjudicate the Motion filed under Rule 35 of the Rules of Criminal Procedure violate Petitioner's state and federal constitutional rights to due process of law?

3.   Is the Putnam County Circuit Court violating Petitioner's state and federal constitutional rights to due process of law by not responding to a correspondence requesting a hearing on a Rule 35 Motion and informing the Court that counsel appointed to amend his Petition for Habeas Corpus is not responding to communications from the Petitioner?

(Id.) By Scheduled Order entered on March 27, 2013, the SCAWV directed Circuit Court Judge Phillip M. Stowers to file any response to the Petition by April 26, 2013. (Document No. 18-10.) On June 4, 2013, the SCAWV refused to issue the requested Petition for Writ of Mandamus. (Document Nos. 18-12 and 28-11.)

5.      **Petition for Writ of Mandamus (No. 18-0435):**

On May 16, 2018, Petitioner filed with the SCAWV a Petition for Writ of Mandamus. (Document Nos. 18-14 and 28-12.) In his Petition, Petitioner requested that the SCAWV issue a

writ of mandamus compelling the Circuit Court Judge Joseph K. Reeder to take action upon his outstanding (1) Motion for Reduction of Sentence that had been pending since February 23, 1989, and (2) Take action in his pending *habeas* proceedings. (Id.) Petitioner also presented the following questions for the SCAWV:

1.   Does the failure to produce a docket sheet violate state and federal constitutional rights to due process of law?

2.   Does the failure to adjudicate a Rule 35 Motion violate petitioner's state and federal constitutional rights to due process of law?

3.   Does the failure to hold a hearing or rule on petitioner's habeas filed in November of 1997 violate petitioner's state and federal constitutional rights?

4.   Is the Putnam County Circuit Court violating state and federal constitutional rights to due process by not transcribing the court reporter's shorthand notes after it was revealed that, with the exception of those notes, the file in this case is missing?

(Id.) On June 19, 2018, Judge Reeder filed his Summary Response responding to the four questions presented by Petitioner. (Document No. 28-13, p. 5.) On January 10, 2019, the SCAWV issued a Rule to Show Cause. (Document No. 18-13.) On January 18, 2019, the Circuit Court entered its "Order Denying Rule 35 Motion" (Document No. 18-15) and an Order appointing counsel to assist Petitioner in filing an Amended *Habeas* Petition and setting forth a briefing schedule concerning Petitioner's *habeas* proceedings (Document Nos. 18-8 and 33-2). Also on January 18, 2019, Judge Reeder filed his Response to Rule to Show Cause. (Document No. 28-13.) On February 4, 2019, the SCAWV denied Petitioner's Petition for Writ of Mandamus as moot based upon the Circuit Court's Orders entered on January 18, 2019. (Document Nos. 18-16 and 28-14.)

**6.    Instant Section 2254 Petition:**

On November 24, 2021, Petitioner, acting *pro se*, filed the instant Petition Under 28 U.S.C.

§ 2254 for Writ of *Habeas Corpus* By a Person in State Custody.[1] (Document No. 1.) As grounds

for *habeas* relief, Petitioner alleges the following:

1.  <u>Double Jeopardy</u>: Petitioner was indicted for first degree murder on November 14, 1986.  On March 7, 1988, he was indicted for aggravated robbery. On April 12, 1988, the state motioned to join the indictments as being the same transaction. On September 13, 1988, at the close of the state's case, the court granted an acquittal on the aggravated robbery and instructed the jury on the lesser included grand larceny. The jury convicted on the grand larceny on September 14, 1988.

2.  <u>Failure to Grant a Mistrial</u>: Pretrial discovery motion requested copies of files, "together with the original notes of any officers . . .." Defense went to trial with a strategy, based on a two gun theory, to create reasonable doubt in the minds of the jury, because ballistics had stated that the victim had both a .38 and .357 caliber bullet removed from his body. At trial the state's expert testified that both bullets were fired from the same gun. The use of that undisclosed evidence was devastating to the reasonable doubt theory defense counsel had planned.

3.  <u>Failure to Instruct on Self-Defense</u>: A state witness raised the issue of self-defense during his examination, and placed the issue into the factual question of whether Petitioner killed the victim in self-defense.

4.  <u>Giving of Malice Instruction</u>: The trial court's finding that there was insufficient evidence to support a charge of aggravated robbery, coupled with the finding of guilt on the lesser included charge of grand larceny, reveals the use of evidence that was barred, i.e. the pistol.

5.  <u>Failure to Provide Verdict Forms Distinguishing the Theory of Murder Relied Upon</u>: Petitioner's second Indictment brought a conspiracy to commit murder under W. Va. Code § 61-10-31, and cited W. Va. Code § 61-2-1. This Count of the second Indictment closely tracked the Red-Man-Act statute, and presented a theory of murder to the jury, which the law did not support in the Petitioner's case. Furthermore, the state's joining of this second indictment, with the murder indictment brought under W. Va. Code § 61-2-2, by basing the murder and robbery upon the same transaction, limited the prosecution to reliance upon the felony murder theory.

6.  <u>Absence of Trial Advocacy</u>:

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

a. *Failing to object to a malice instruction which was unconstitutional.* State's Instruction No. 1 stated in part, that "to convict one of murder it is necessary that malice should exist in the heart of the defendant . . . against the deceased . . .."

b. *Failing to object during the prosecutor's closing arguments.* The Prosecutor portrayed Petitioner as the devil while mentioning (1) The church, (2) Fourteen priests; (3) Ten Rabbis, and (4) A bunch of Ministers. He concluded by saying that the friends of the devil are not angels. This was all done in conjunction with (A) vouching the credibility of state witnesses, (B) using evidence which had been ruled out, (C) misstating the evidence, and (D) stating to the jury that the Petitioner was guilty.

c. *Failing to object to trial judge's remark about the evidence.* During his testimony, the state's medical examiner speculated as to where the victim was in relation to the shooter at the time he was shot, in relation to his wounds. The defense made their third objection to that testimony, at that point the judge stated, "if I understand the question with regard to the wounds, that would have to had happened."

(Document No. 1, pp. 4 – 7, 13 - 16.) As relief, Petitioner requests "unconditional release, or any other relief to which petitioner may be entitled." (Id., p. 10.)

By Order entered on November 30, 2021, the undersigned directed Respondent to file a limited Response addressing the timeliness of Petitioner's Petition and "include copies of Court and other records which would facilitate determination of the timeliness of Petitioner's Petition." (Document No. 5.) On December 9, 2021, Petitioner filed a "Motion for Temporary Restraining Order/Preliminary Injunction with Supporting Memorandum of Law." (Document No. 7.) Also on December 9, 2021, Petitioner filed a "Motion to Exceed Page Limitation" concerning his Memorandum of Law in Support of his Section 2254 Petition. (Document No. 8.) By Order entered on December 10, 2021, the undersigned granted Petitioner's Motion to Exceed Page Limitation.[2]

---

[2] By footnote, the undersigned noted the filing of Petitioner's Motion for Temporary Restraining

12

(Document No. 9.) On December 22, 2021, Respondent filed his Response in Opposition to Petitioner's "Motion for Temporary Restraining Order/Preliminary Injunction with Supporting Memorandum of Law." (Document No. 11.) Respondent argued that Petitioner's Motion should be denied based on the following: (1) "Petitioner's motion is improperly filed in the instant § 2254 proceeding" (Id., pp. 4 – 5.); and (2) "Even if Petitioner's motion was proper in this habeas corpus action, he is not entitled to the relief he seeks." (Id., pp. 5 – 10.)

On January 13, 2022, Petitioner filed his Memorandum of Law in Support of his Section 2254 Petition. (Document No. 15.) In his Memorandum in Support, Petitioner includes the following additional grounds for relief:

Issue 1.    Petitioner's conviction for murder, following his acquittal of aggravated robbery, violated his rights under the Fifth and Fourteenth Amendments of the United States Constitution, and West Virginia.

Issue 2.    The failure to grant a mistrial, following the introduction of evidence not revealed in discovery, violated the Petitioner's rights under the United States Constitution, Amendments Six and Fourteen and West Virginia Constitution Article 3, Section 10.

Issue 3.    Petitioner's rights were violated under the United States Constitution, Amendments Six and Fourteen, and West Virginia Constitution Article Three, Section Ten and Fourteen, when the Court refused Petitioner's offered self-defense instruction.

Issue 4.    The Petitioner's rights were violated when the Court granted an instruction allowing the jury to infer malice from the use of a deadly weapon, in a case containing a bar against evidence of a firearm, in violation of Amendments Five, Six, and Fourteen of the United States Constitution and West Virginia Constitution, Article Three, Section Five and Section Ten.

---

Order/Preliminary Injunction. (Document No. 9, p. 1, fn. 1.) The undersigned notified Petitioner that "[t]o the extent Petitioner is wishing to assert a due process claim for the taking of his personal property or a claim of denial of access to the courts, such claims are properly asserted in a Section 1983 action." (Id.) The undersigned further directed the Clerk to send Petitioner a form Complaint and Motion to Proceed Without Prepayment of Fees and Costs. (Id.)

Issue 5.      The Court's failure to provide verdict forms that distinguished the theory of murder relied upon for conviction, or to instruct the jury as to what theories were available, violated Petitioner's rights under the United States Constitution, Amendments Five, Six, and Fourteen, and West Virginia Constitution, Article 3, § 10.

Issue 6.      Ineffective assistance of trial counsel violated Petitioner's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and Article 3, Section 5, 10, and 14 of the West Virginia Constitution.

      (i)      Right to Effective Assistance of Counsel

      (ii)      Inadequate trial preparation.

      (iii)      Absence of trial advocacy:

            (a)      The Petitioner's constitutional right to a fair trial was violated by ineffective assistance of counsel when counsel failed to object to a malice instruction which stated, " . . . to convict one of murder it is not necessary that malice should exist in the heart of the defendant, . . . against the deceased," in violation of the Sixth and Fourteenth Amendments of the United States Constitution, and West Virginia Constitution, Article III, Sections Ten and Fourteen.

            (b)      Ineffective assistance of counsel in violation of the right to a fair trial during the closing argument, when counsel for the defense: (1) Made remarks that were prejudicial to the Petitioner's case; (2) Made no objection to the continued reference to the Petitioner as the devil; (3) Did not object to vouching of the credibility of a state witness; (4) Made no objection to the use of evidence which had been ruled out during trial by the judge through an acquittal on robbery; (5) Made no objection to the prosecutor's misstating the evidence; (6) Did not object to the prosecutor stating Petition was guilty. All in violation of the United States Constitution, Amendment Five, Six, Fourteen, and West Virginia Constitution, Art. III, § 5, § 10, and § 14.

            (c)      Petitioner's right to a fair trial was violated by ineffective assistance of counsel when counsel failed to object to the Judge's remark that, "If I understand

14

> the Answer to the question with regard to the wounds, that would had to have happened," violated Petitioner's rights under the Sixth and Fourteenth Amendments of the United States Constitution and West Virginia Constitution, Article III, § 10.

(Document No. 15, pp. 8 – 41.)

On February 15, 2022, Respondent filed his "Motion to Dismiss Under Rule 12(b)(6) for Untimeliness" and Memorandum in Support. (Document Nos. 18 and 19.) On February 15, 2022, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondent's "Motion to Dismiss Under Rule 12(b)(6) for Untimeliness." (Document No. 20.) On April 22, 2022, Petitioner filed his Reply. (Document No. 23.) By Proposed Findings and Recommendation ("PF&R") entered on May 5, 2022, the undersigned recommended that the District Court deny Petitioner's "Motion for Temporary Restraining Order/Preliminary Injunction with Supporting Memorandum of Law" (Document No. 7), deny Respondent's "Motion to Dismiss Under Rule 12(b)(6) for Untimeliness" (Document No. 18), and refer the matter back to the undersigned for further proceedings. (Document No. 24.) By Memorandum Opinion and Order entered on May 24, 2022, United States District Judge Robert C. Chambers adopted the undersigned's PF&R and referred the matter back to the undersigned for further proceedings. (Document No. 26.)

By Order entered on May 25, 2022, the undersigned directed Respondent to file an Answer to Petitioner's Section 2254 Petition. (Document No. 27.) On July 20, 2022, Respondent filed his "Motion to Dismiss for Failure to Exhaust State Remedies" and Memorandum in Support. (Document No. 28 and 29.) Respondent first argues that "exhaustion of state remedies is a necessary condition precedent to a federal court addressing a Petitioner's claim in habeas." (Document No. 29, pp. 7 – 8.) Second, Respondent contends that "exhaustion requires the

Petitioner to prove that he has fairly presented the same claims he is raising in Federal Court through the West Virginia judiciary to the West Virginia Supreme Court of Appeal." (Id., pp. 8 – 10.) Finally, Respondent argues that it is evident from the record that Petitioner has not fully exhausted his state remedies as to all federal *habeas* claims. (Id., pp. 10 – 15.) Respondent explains that the SCAWV "has only four cases that are in the court's records that have been filed by Petitioner: Docket Nos. 891404, 13-0278, 18-0435, and 19-0123." (Id., p. 10.) Respondent states that "[o]nly Docket No. 891404 exhausted the Petitioner's state remedies and in that appeal the Petitioner did not raise all the claims he has raised in his federal *habeas* corpus petition." (Id.) Respondent contends that Petitioner has only exhausted the three claims asserted in his direct appeal. (Id.) Respondent acknowledges that Petitioner filed an original jurisdiction Mandamus Petition in 2013 (Docket No. 13-0278) asserting three claims, but Respondent argues such did not exhaust Petitioner's State remedies because the SCAWV refused the request for mandamus and did not address the merits of Petitioner's claims. (Id., p. 11.) Respondent further notes that Petitioner filed a second original jurisdiction Mandamus Petition in 2018 (Docket No. 18-0435) asserting four claims, but Respondent argues such did not exhaust Petitioner's State remedies because the SCAWV dismissed the matter as moot and failed to address the merits of Petitioner's claims. (Id., p. 12.) Respondent finally acknowledges that Petitioner filed an appeal from the Circuit Court's denial of Petitioner's motion for reduction of sentence under Rule 35 (Docket No. 19-0123) asserting two claims of error, but Respondent contends that such did not exhaust Petitioner's State remedies because a Rule 35(b) motion does not address the merits of the underlying conviction or sentence. (Id., pp. 13 - 14.) Accordingly, Respondent argues that Petitioner's Petition "presented a mixed petition that should be dismissed or at least stayed and held in abeyance pending the resolution of his ongoing state court habeas proceedings." (Id., p.

16

15.)

On July 21, 2022, the Court issued an "Order and Notice" pursuant to <u>Roseboro v.</u> <u>Garrison</u>, 528 F.2d 309 (4th Cir. 1975) advising Petitioner of his right to file a reply to Respondent's Response requesting dismissal. (Document No. 30.) On August 8, 2022, Petitioner filed his "Reply and Objection." (Document No. 31.) Petitioner argues that his failure to exhaust should be excused based upon inordinate delay as his State *habeas* proceedings have been ongoing since November 20, 1997. (<u>Id.</u>, p. 1.) Petitioner complains that he filed a Motion for Appointment Counsel in conjunction with his State *habeas* petition, but Judge Spaulding failed to rule upon his Motion for Appointment of Counsel. (<u>Id.</u>, p. 2.) Petitioner states there was no action in his case "until it was before another Putnam County Circuit Court Judge" (Judge Reeder). (<u>Id.</u>) Petitioner explains that Judge Reeder appointed Mr. Bayliss as counsel on or about September 21, 2012, but Mr. Bayliss never "wrote or filed anything as far as Petitioner knows." (<u>Id.</u>) Petitioner, however, acknowledges that "during the course of a bar complaint, Mr. Bayless attached a letter to his response which revealed that he was not provided the record [and] was in fact attempting to acquire it from another source." (<u>Id.</u>) Petitioner notes that Mr. Bayliss filed a Motion to Withdraw as Counsel on August 5, 2013, and Judge Reeder granted the motion and appointed Mr. Dascoli as counsel on September 5, 2013. (<u>Id.</u>, p. 3.) Petitioner, however, complains that he "was totally unaware of Dascoli's appointment" and the "file contains no filings or other activity from Mr. Dascoli." (<u>Id.</u>) Petitioner states that Mr. Rosenlieb was appointed to represented Petitioner on May 3, 2016, which "was spurred by the Petitioner filing a Motion for Status Conference on April 5, 2016." (<u>Id.</u>) Petitioner claims that "[o]n November 14, 2016, Mr. Rosenlieb wrote the only 'actual' correspondence that the Petitioner has received from any attorney that the Putnam County Circuit

Court has appointed to file an Amended Habeas."[3] (Id.) Petitioner explains that in that correspondence, "Mr. Rosenlieb stated, 'I've been pretty sick over the last year or so, but am trying to make a come back and get ready to litigate your case. I will try to be in touch with you more frequently in the unfolding months.'" (Id.) Petitioner states that he then filed his Amended Petition, *pro se*, because he had "little hope of help." (Id.) Petitioner then states that in a later correspondence, Mr. Rosenlieb informed Petitioner that "he needed the Petitioner to complete a Losh List" to assist him to develop grounds for Petitioner's Amended *Habeas* Petition. (Id.) Petitioner indicates that he refused the request because Petitioner did not "understand how one would use a Losh List to develop anything without the supporting record." (Id.) Petitioner acknowledges that Circuit Court conducted a hearing on May 24, 2017, in response to Petitioner's Motion to Remove Appointed Counsel and Proceed *Pro se*. (Id., pp. 3 – 4.) Petitioner states that he informed the Court that if there was difficulty obtaining the record, Petitioner possessed most of the record, including the transcripts, and would provide a copy of such if there was an order provided to waive institutional cost. (Id.) Petitioner acknowledges that the Circuit Court relieved Mr. Rosenlieb as counsel by Order entered on May 26, 2017. (Id.) Petitioner explains that "when the order to waive copying fees never materialized, on July 13, 2017, the Petitioner filed a Motion to Prepare Transcripts." (Id., p. 4.) Next, Petitioner states that he filed a Petition for Writ of Mandamus with the SCAWV on May 15, 2018. (Id.) Petitioner, however, complains that Judge Reeder's Summary Response violated the following: (1) "Rule 7(d)(5) of the WVSCA Revised Rules of Appellate Procedure;" (2) "Rule 80(c) of the West Virginia Rules of Civil Procedure by

---

[3] Although Petitioner states that this was the "only actual correspondence" from Mr. Rosenlieb, Petitioner later acknowledges that he received additional correspondence from Mr. Rosenlieb regarding the completion of the Losh List.

not providing the Petitioner with a copy of the May 24, 2017 video conference hearing transcripts;" and (3) "Rule 37 of the WVSCA Revised Rules of Appellate Procedure." (Id.) Petitioner acknowledges that after the filing of Judge Reeder's Summary Response, the SCAWV entered a Rule to Show Cause. (Id., pp. 4 – 5.) Petitioner states that SCAWV determined the Petition for Writ of Mandamus was mooted by the Circuit Court entering an Order denying Petitioner's Rule 35 Motion and an Order appointing *habeas* counsel and setting a briefing schedule. (Id., p. 5.) Petitioner, however, complains that Judge Reeder's Response to the Show Cause Order "implies that Petitioner has an inability or unwillingness to work with counsel." (Id.) Petitioner further admits that during a visit from Mr. Hostler," Petitioner "refused to hand over his entire file to a man he had just met." (Id.) Petitioner then complains that Mr. Hostler filed a Motion for Extension of Time regarding the filing of an Amended *Habeas* Petition. (Id.) Petitioner states that "no further action has taken place, and Judge Reeder is nearly three years late in making a ruling on the Petitioner's habeas Petition." (Id.) Petitioner further contends that the "State has not attempted to address the issues in Petitioner's brief using the record" even though such is now available. (Id.) Petitioner requests that this Court address the merits of his Section 2254 Petition because he "has no faith in the lower court ruling on the case in a proper manner." (Id., p. 6.)

On August 15, 2022, Respondent filed his Reply. (Document No. 33.) Respondent explains that only one of Petitioner's exhausted claims is raised in his Section 2254 Petition. (Id., pp. 1 – 2.) Respondent states that it is undisputed that Petitioner's State *habeas* petition is still pending before the Circuit Court and "that '[t]he exact same issues presented here are pending before the Putnam County Circuit Court' in an 'Amended *Habeas* which was filed January 11, 2017.'" (Id., p. 2.) Respondent further asserts that "[t]he State habeas matter remains active, awaiting Petitioner's filing of a second amended habeas petition." (Id.) Next, Respondent argues that

19

Petitioner's failure to exhaust is not excused by inordinate delay. (Id., pp. 2 – 10.) In consideration of the length of delay, Respondent notes that Petitioner's claim that his *habeas* petition has been pending since November 1997 is misleading. (Id., pp. 3 – 4.) Respondent explains that Petitioner raised only three of his grounds for relief in his original State *habeas* petition. (Id.) Respondent notes that it was not until Petitioner filed his *pro se* Amended *Habeas* Petition on January 20, 2017, that Petitioner asserted his claims in their entirety, as they are presented in the Section 2254 Petition, to the State court. (Id.) In consideration of the action taken in State court, Respondent argues that "a number of events have occurred" since the filing of Petitioner's *pro se* Amended *Habeas* Petition on January 20, 2017. (Id., pp. 4 – 8.) In consideration of the party responsible for the complained of delay, Respondent notes that the following actions taken by Petitioner since the filing of his *pro se* Amended *Habeas* Petition that has caused delay: (1) Petitioner filed a motion to relieve his appointed *habeas* counsel, which the Circuit Court granted; (2) Petitioner filed an original jurisdiction Petition for Writ of Mandamus, which the SCAWV dismissed as moot; (3) Petitioner filed an appeal from the Circuit Court's Order denying his Rule 35(b) Motion, which the SCAWV affirmed; and (4) Petitioner, by counsel, filed a Motion for Extension of Time to file his second amended *habeas* petition and the second amended *habeas* petition has not yet been filed. (Id., p. 8.) Finally, Respondent argues that exhaustion should not be excused. (Id., pp. 8 – 9.) Respondent explains that "although the State *habeas* case has not progressed on the most expeditious timeline since January 2017, it appears that in January 2019 it was 'reactivated' by the circuit court appointing new habeas counsel, scheduling and holding a hearing, setting a deadline for a final petition to be filed by Petitioner, and scheduling a final hearing." (Id.) Respondent argues that instead of focusing his attention on filing his Second Amended *Habeas* Petition, Petitioner focused his attention on appealing the Circuit Court's denial of his Rule 35(b) motion

in Docket No. 19-0123. (Id., p. 9.) Respondent notes that the Circuit Court scheduled a status hearing for July 22, 2022, "likely in an effort to determine the reason for the absence of Petitioner's filing" of the Second Amended *Habeas* Petition. (Id.) Respondent further argues that "[t]here is nothing in the record in Case No. 97-C-369 demonstrating that any delay following Petitioner's July 8, 2019 motion for additional time to file a second amended petition was caused by the State." (Id.) Respondent concluded that "[t]his is not an extreme case that warrants excusing exhaustion." (Id., p. 10.)

On September 28, 2022, Petitioner filed his Sur-Reply. (Document No. 36.) Petitioner first reasserts the same arguments as set forth in his "Reply and Objection" (Document No. 31). Second, Petitioner acknowledges that a video conference was conducted in his State *habeas* proceedings on September 14, 2022. (Id., p. 5.) Petitioner states that "Judge Reeder informed the Petitioner that the fourth attorney, Carl Hostler, was no longer in private practice and Judge Reeder appointed Jason T. Gain to represent the Petitioner." (Id.) Petitioner further states that "[d]uring the hearing Petitioner made a motion to recuse Prosecuting Attorney Mark Sorsaia because he represented a co-defendant during the trial of Petitioner's case" and a "written motion was filed the following day." (Id.) Third, Petitioner argues that "Respondent's claim that January 20, 2017, should be the date from which exhaustion starts is in direct conflict with Rule 15 of the West Virginia Rules of Civil Procedure." (Id., p. 6.) Petitioner contends that he properly amended the State *habeas* petition pursuant to Rule 15. (Id.) Fourth, Petitioner claims that "Respondent's contention that this Court should discount the first twenty years, including fifteen years in which the prosecutor who tried the case blocked relief,[4] and five years in which the Circuit Court denied relief by appointing

---

[4] There is no allegation of facts to support Petitioner's conclusory claim that the prosecutor "blocked relief."

attorneys and refusing to provide them with the case file is an attempt to have this Court deny Petitioner his due process rights by discounting the West Virginia Rules of Civil Procedure." (Id.) Finally, Petitioner argues that although a Motion for Extension of Time was filed by Mr. Hostler regarding the filing of Petitioner's second amended State *habeas* petition, Petitioner argues that Judge Reeder knew Petitioner did not intend to file another amended *habeas* petition. (Id.) Petitioner contends that Judge Reeder knew this because "Petitioner wrote Judge Reeder the day he filed his amended habeas and stated, 'I consider these to be the final filings and have no desire to have Attorney Rosenlieb amend them further." (Id.)

## **THE APPLICABLE STANDARD**

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. <u>See</u> <u>Walker v. True</u>, 399 F.3d 315, 319, n. 1. (4th Cir. 2005); <u>also see</u> Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section 2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." <u>Walker v. Kelly</u>, 589 F.3d 127, 139 (4th Cir. 2009)(citing <u>Wolfe v. Johnson</u>, 565 F.3d 140, 169 (4th Cir. 2009). The court, however, is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" <u>Massey v. Ojaniit</u>, 759 F.3d 343, 353 (4th Cir. 2014)(quoting <u>Blankenship v. Manchin</u>, 471 F.3d 523, 529 (4th Cir. 2006). When assessing whether the Section 2254 petition states a claim for relief, the court must consider "the face of the petition any attached exhibits." <u>Wolfe</u>, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits and matters of

22

public record, such as documents from prior state court proceedings, in conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for summary judgment. <u>Walker</u>, 589 F.3d at 139.

## ANALYSIS

1.    **Failure to Exhaust:**

In his Motion, Respondent argues that Petitioner has filed a mixed Petition containing both exhausted and unexhausted claims. (Document Nos. 28 and 29.) Respondent explains that the SCAWV "has only four cases that are in the court's records that have been filed by Petitioner: Docket Nos. 891404, 13-0278, 18-0435, and 19-0123." (Document No. 29, p. 10.) Respondent states that "[o]nly Docket No. 891404 exhausted the Petitioner's state remedies and in that appeal the Petitioner did not raise all the claims he has raised in his federal habeas corpus petition." (<u>Id.</u>) Although Respondent acknowledges that Petitioner filed two original jurisdiction mandamus petitions, Respondent argues that neither exhausted Petitioner's State remedies because the SCAWV dismissed both without addressing the merits. (<u>Id.</u>, pp. 11 – 12.) Respondent further acknowledges that Petitioner filed an appeal concerning the Circuit Court's denial of his motion for reduction of sentence under Rule 35(b), but states that such did not exhaust Petitioner's State remedies because a Rule 35(b) motion does not attack the legality of the sentence nor the validity of the underlying conviction.[5] (<u>Id.</u>, pp. 12 – 14.) Accordingly, Respondent concludes that Petitioner's Petition should be dismissed based upon his failure to exhaust. (<u>Id.</u>) In Response, Petitioner appears to acknowledge that his claims are unexhausted. (Document No. 31.) Petitioner, however, contends that he should be excused from the exhaustion requirement based upon the

---

[5] Additionally, Petitioner only included two issues in his appeal of the denial of his Rule 35(b) motion.

inordinate delay of his State *habeas* proceeding. (Id.)

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); see also, McDaniel v. Holland, 631 F.Supp. 1544, 1545 (S.D. W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. See Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds*, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles' 'must be presented to the state court." Id. (quoting Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). Although it is unnecessary to cite "book and verse on the federal constitution," "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Picard, 404 U.S. at 278, 92 S.Ct. at 514; Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(internal citations omitted); Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews, supra, 105 F.3d at 911. "If state courts are to be

24

given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged events establish a violation of his constitutional rights." Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the state's highest court on either direct or collateral review. Id. at 844, 119 S.Ct. at 1732. In West Virginia, prisoners may exhaust their available State court remedies by the following: (1) stating cognizable federal constitutional claims in a direct appeal to the West Virginia Supreme Court of Appeals; (2) stating cognizable federal constitutional claims in a petition for a writ of *habeas corpus* in a State circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the West Virginia Supreme

25

Court of Appeals; or (3) filing a petition for writ of *habeas* corpus under the West Virginia Supreme Court's original jurisdiction and receiving a dismissal with prejudice.[6] Moore v. Kirby, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); McDaniel v. Holland, 631 F.Supp. 1544, 1545-46 (S.D.W.Va. 1986).

Generally, a federal district court may not review a Section 2254 petition unless there has been "total exhaustion" of the presented issues. Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); also see Preiser v. Rodriguez, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)(When a petitioner fails to exhaust his state court remedies, a federal *habeas* petition should be dismissed.) When a petitioner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the District Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claims and proceed with the exhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). "[N]otwithstanding the failure of an applicant to exhaust the remedies available in the courts of the state," a district court may deny the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2); also see White v. Keller, 2013 WL 791008, * 5 (M.D.N.C. March 4, 2013). To be excused from the exhaustion requirement, Petitioner must establish that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The foregoing statutory exceptions apply "only if

---

[6] An original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the petitioner's state court remedies. *See Moore*, 879 F.Supp. at 593; *McDaniel*, 631 F.Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990)(*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981); also see Farmer v. Circuit Court of Md. for Balt. City., 31 F.3d 219, 223 (4th Cir. 1994)("There is . . . authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance."). A finding of futility sufficient to excuse exhaustion may be found where either something in the record of the petitioner's case clearly indicates that the state court where petitioner otherwise could seek relief will not consider the petitioner's claim, or the law of the state clearly precludes any further review of the petitioner's claim. Knight v. State of West Virginia, 981 F.2d 1251 (4th Cir. 1992)("[W]hen it is clear that the state court will refuse to entertain a habeas petitioner's claim, the prisoner need not exhaust his state remedies, because the prisoner is not required exhaust a claim when seek relief in the state courts would clearly be futile.")(citing Teague v. Lane, 489 U.S. 288 (1989)). Additionally, "[s]tate remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." Ward v. Freeman, 46 F.3d 1129 (4th Cir. 1995)(unpublished table decision).

A review of record reveals that only one of Petitioner's exhausted claims is raised in his Section 2254 Petition. Specifically, Petitioner's claim that the trial court's refusal to instruct the jury on self-defense denied Petitioner his constitutional right to a fair trial is the only exhausted claim asserted his Petitioner's Section 2254. This claim is set forth as Ground Three and Issue Three in Petitioner's Section 2254 Petition and Memorandum in Support. (See Document Nos. 1 and 15.) All remaining claims asserted in Petitioner's Section 2254 Petition and Memorandum in Support remain unexhausted. Although Petitioner has filed a State *habeas* petition, Petitioner's

State *habeas* proceedings are not yet completed. Thus, Petitioner's Section 2254 Petition is a mixed Petition containing both exhausted and unexhausted claims. The undersigned, therefore, will consider Petitioner's claim that he should be excused from the exhaustion requirement based upon inordinate delay.

**2.    Inordinate Delay:**

As stated above, in extreme cases, state remedies "may be rendered ineffective by inordinate delay or inaction in state proceedings" so that exhaustion of those remedies is excused. Ward, 46 F.3d at 1129. When determining whether the alleged delay is inordinate such that exhaustion should be excused, courts should consider the following factors: (1) "the length of delay;" (2) "the significance of any action that has been taken in state court;" and (3) "the party responsible for the complained-of delay." Plymail v. Mirandy, 2017 WL 4280676, * 7 (S.D.W.Va. Sep. 27, 2017)(J. Chambers)(citations omitted). "If an inordinate delay is found, the burden shifts to the State to provide justification for the delay and to demonstrate why the petitioner should still be required to exhaust his state court remedies before seeking relief in federal court. Id. (citing Story v. Kindt, 26 F.3d 402, 405 (3rd Cir. 1994)).

**A.    Length of Delay:**

First, the undersigned will consider the length of delay. Generally, courts find an inordinate delay only when long periods of time have passed. See Brennan v. McGraw, 2012 WL 3656487 (S.D.W.Va. Aug. 24, 2012)(J. Goodwin)(citations omitted)("[D]elay only rises to the level of 'inordinate' in extreme cases."); also see Turner v. Bagley, 401 F.3d 718, 726-27 (6th Cir. 2004)(excusing exhaustion where the petitioner's state direct appeal had been pending for 11 years); Lee v. Stickman, 357 F.3d 338, 341-42 (3rd Cir. 2004)(holding that an 8-year delay in

reaching the merits of a post-conviction petition constitute inordinate delay); Mathis v. Hood, 851 F.2d 612, 614 (2nd Cir. 1988)(finding a 6-year delay of direct appeal constitutes inordinate delay); Gardner v. Plumley, 2013 WL 5999041 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(finding inordinate delay where petitioner's state proceedings were pending for nearly 20 years without a decision from the state court). Thus, courts generally reject claims of inordinate delay when there are only brief periods of delay. Also see Miller v. McFadden, 2015 WL 846530 (D.S.C. Feb. 26, 2015)(finding no inordinate delay where the time between when the petition was filed and when the Circuit Court issued its Order of Dismissal was approximately 24 months); Cobarruvias v. Cartledge, 2012 WL 6772231, * 2 (D.S.C. Nov. 2012)(finding that 22 months does not qualify as inordinate delay); Short v. Hoke, 2010 WL 2509633 (S.D.W.Va. June 18, 2010)(J. Faber)(finding no inordinate delay based upon petitioner's State petition pending in the circuit court for little more than a year); Walkup v. Haines, 2005 WL 2428163 (S.D.W.Va. Sept. 30, 2005)(J. Faber)(finding a 3 year delay not to be inordinate delay); Cook v. Florida Parole and Probation Commission, 749 F.2d 678 (11th Cir. 1985)(finding a three and half year delay in ruling on petitioner's *habeas* petition to be insufficient to justify excusing the exhaustion requirement); and Booker v. Kelly, 636 F.Supp. 319 (W.D.N.Y. 1986)(finding no complete absence of state corrective procedure based upon a three year delay of petitioner's appeal caused by ineffective assistance of counsel).

In the instant case, the undisputed record reveals Petitioner filed his original *pro se* State *habeas* Petition on November 20, 1997. (Document No. 18-8, 18-9, 28-5.) Petitioner's original State *habeas* Petition asserted only three of the claims set forth in Petitioner's instant Section 2254 Petition. On January 20, 2017, Petitioner filed his *pro se* Amended State *Habeas* Petition, wherein he asserted all claims presented in his Section 2254 Petition. (Document Nos. 28-6 and 28-7.)

Respondent, therefore, argues that the Court should only consider any possible delay starting with the date of his Amended State *habeas* Petition. (Document No. 33, pp. 3 – 4.) Respondent, however, fails to cite any authority supporting his claim that the Court should only consider delay occurring after the filing the petition or amended petition that includes all claims a petitioner is attempting to exhaust. As set forth above, case law supports the Court's consideration of the delay based on the length of time a State *habeas* petition has been pending in State court. Thus, the undersigned rejects Respondent's argument that the Court should only consider delay occurring *after* the filing of Petitioner's *pro se* Amended State *habeas* Petition (January 20, 2017). The record reveals that although Petitioner has been appointed five different attorneys since the filing of his *habeas* case, a final amended *habeas* petition has not yet been filed. Thus, it is undisputed that Petitioner's State *habeas* proceedings have been pending for nearly 25 years. Based on the foregoing, the undersigned finds that the alleged delay in Petitioner's State *habeas* proceedings is of the magnitude of delay that has been determined to be inordinate. Accordingly, the foregoing factor weighs in favor of excusing exhaustion.

 **B.**  **Progress of State Proceedings:**

 Next, the undersigned will consider the progress of Petitioner's *habeas* proceedings in State court. See Lee v. Stickman, 357 F.3d 338, 342 (3rd Cir. 2004)(When considering the length of the delay, the court should also consider "the degree of progress made in state court.") Even if a case is progressing slowly in state court, a federal court should not excuse exhaustion if the state case is proceeding normally. Burkett v. Cunningham, 826 F.2d 1208, 1218 (3rd Cir. 1987). Furthermore, the delay must be ongoing and "a federal court should 'stay its hand' if there is evidence that the state court action . . . has been 'reactivated.'" See Plymail, 2017 WL 4280676, * 9 (quoting Walker

v. Vaughn, 53 F.3d 609, 614 (3rd Cir. 1995)(stating that even if a petitioner can show unreasonably delay, "a federal court should 'stay its hand' if there is evidence that the state court action is proceeding normally or has been 'reactivated.'")

In the instant case, Petitioner complains that none of the attorneys appointed as *habeas* counsel have filed an amended *habeas* Petition on Petitioner's behalf nor has the Circuit Court ruled upon Petitioner's *pro se* Amended *Habeas* Petition filed on January 20, 2017. Respondent argues that since the filing of Petitioner's *pro se* Amended *Habeas* Petition, a "number of events have occurred" involving Petitioner's State *habeas* proceedings and concerning filings before the SCAWV. Based upon the procedural history described above, the undersigned finds there were periods of time where Petitioner's State *habeas* proceedings appeared to have lain dormant in the Circuit Court. It appears that no action was taken in Petitioner's State *habeas* proceedings between December 2, 1997 and August 28, 2012. Petitioner, however, acknowledges that he made no contact or filings with the Court between these dates. Upon the filing of Petitioner's Motion for Appointment of Counsel on August 28, 2012, the Circuit Court entered an Order appointing counsel approximately two weeks later. By Orders entered on January 16, 2013, April 19, 2013, and July 26, 2013, the Circuit Court granted Petitioner extensions of time to file his Amended *Habeas* Petition. Subsequently, Petitioner filed a complaint against Mr. Bayliss with the West Virginia State Bar. Between March 15, 2013 and July 26, 2013, Petitioner had a Petition for Writ of Mandamus pending before the SCAWV wherein he requested mandamus relief mainly focusing on his Rule 35 Motion and presenting questions to the SCAWV. Next, there appeared to be no action between September 5, 2013 (when the Circuit Court granted Mr. Bayliss' motion to withdraw as counsel and Mr. Dascoli was appointed as new *habeas* counsel) and May 3, 2016

31

(when Mr. Dascoli was relieved as counsel and Mr. Rosenlieb was appointed as *habeas* counsel). Between May 3, 2016 (the date Mr. Rosenlieb was appointed) and January 20, 2017 (the date Petitioner filed his *pro se* Amended State *Habeas* Petition), there appeared to be no filings in Petitioner's *habeas* proceedings. On May 24, 2017, however, the Circuit Court conducted a hearing on Petitioner's Motion to Proceed *Pro Se* and Remove Appointed Counsel.[7] Mr. Rosenlieb described uncooperative behavior by Petitioner and noted that Petitioner refused to sign a Losh List. After noting that Mr. Rosenlieb would be relieved as counsel and Petitioner's desire to move forward *pro se*, the Circuit Court stated that the Court questioned Petitioner's ability or the wisdom of Petitioner proceeding forward *pro se*. Petitioner then informed the Circuit Court that "[i]f you're going to appoint a lawyer, I would ask that that be co-counsel. If not co-counsel, then not at all." By Order entered on May 30, 2017, Mr. Rosenlieb was relieved as counsel and Petitioner's motion to proceed *pro se* was held in abeyance. Between May 30, 2017 (the date the Circuit Court held Petitioner's Motion to Proceed *Pro se* in abeyance) and January 17, 2019, there appeared to be no action in Petitioner's *habeas* proceedings. There, however, were ongoing proceedings before the SCAWV between May 16, 2018 and February 4, 2019, concerning Petitioner's Petition for Writ of Mandamus presenting questions to the SCAWV and requesting mandamus relief concerning both his Rule 35 Motion and *habeas* proceedings. On January 17, 2019, the Circuit Court entered an order setting forth briefing deadlines and appointed Carl Hostler as counsel to assist Petitioner with the filing of an Amended *Habeas* Petition. The Circuit Court conducted a hearing on February 28, 2019. On July 8, 2019, Petitioner, by counsel, filed a Motion for a Thirty Day Extension of Time concerning the filing of his Amended *Habeas* Petition due to the lack of a trail transcript in

---

[7] On March 27, 2017, Petitioner filed a Motion to Proceed *Pro Se* and Remove Appointed Counsel.

the Office of the Clerk of the Circuit Court of Putnam County. Between February 13, 2019 (the date Petitioner filed his notice of appeal) and November 16, 2020 (the date the United States Supreme Court denied Petitioner's Petition for Writ of Certiorari), Petitioner was pursuing before the SCAWV and the United States Supreme Court his challenge to the Circuit Court's Order denying his Rule 35 Motion for Reduction of Sentence. By Order entered on July 21, 2022, the Circuit Court continued the status hearing in Petitioner's *habeas* proceedings scheduled for July 22, 2022, due to a scheduling conflict. On September 14, 2022, the Circuit Court conducted the Status Conference. During the Status Conference, the Circuit Court noted that Mr. Hoslter was no longer in private practice and appointed Jason T. Gain new *habeas* counsel. On September 15, 2022, Petitioner filed a "Motion for Recusal of Prosecutor Mark A. Sorsaia." Therefore, the undersigned notes that even though there was lack of progress in Petitioner's State *habeas* proceedings at times, these proceedings now appear to be reactivated and currently moving forward. Thus, the foregoing factor does not weigh in favor of excusing exhaustion.

**C.    Responsibility for Delay:**

Finally, the undersigned will consider who is responsible for the alleged delay. The undersigned finds that the majority of the delay in this case is the result of the Circuit Court failing to manage its docket. Although the Circuit Court usually acted with reasonable promptness in addressing motions filed by Petitioner in his *habeas* proceedings and appointing counsel, the Circuit Court initially failed to enter a scheduling order or conduct status conferences. Despite the numerous appointments of new counsel, four of the appointed attorneys never filed an amended *habeas* petition on behalf of Petitioner. Delays caused by court-appointed counsel may be attributed to the State where "the petitioner has not personally caused the delays nor condoned

33

them." Gardner v. Plumley, 2013 WL 5999041, * 6 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(citations omitted)("The rule excusing exhaustion in cases of inordinate delay is not limited to delays caused by judge, court officials, and prosecutors; it also has been applied to delays caused by court-appointed counsel, which may be 'attributable to the state' as long as 'the petitioner has not personally caused the delays nor condoned them."); also see Turner v. Bagley, 401 F.3d 718, 726 (6th Cir. 2005)("failures of court-appointed counsel and delays by the court are attributable to the state"). It seems apparent to this Court that the entry of a scheduling order by the Circuit Court would have resulted in the Circuit Court actively managing its docket thereby ensuring that Petitioner's State *habeas* action moved forward with reasonable speed. The appointment of five new attorneys as *habeas* counsel also resulted in some delay. It is reasonable that some delay would occur as a result of the appointment of new counsel. Each replacement attorney needs time to obtain and review the file and become familiar with the facts and applicable law. Next, the undersigned acknowledges that Petitioner's litigious action concerning his Rule 35 Motion filed in the underlying criminal action and related filings with the SCAWV and the United States Supreme Court resulted in some delay. Furthermore, the record reveals long periods of time where there were no filings by Petitioner or his counsel. Although the Circuit Court is ultimately responsible for managing its docket, a petitioner cannot sit on his rights and then expect to benefit from his lack of diligence. The Circuit Court had a history of acting with reasonable promptness in addressing motions filed by Petitioner, yet Petitioner often waited years before complaining that he was dissatisfied with counsel or any delay. If Petitioner was either dissatisfied with counsel, or did not consent to the delay, Petitioner should have immediately notified the Circuit Court of such and requested action by the Circuit Court. The record reveals that the Circuit Court took action to

move Petitioner's *habeas* proceedings forward when Petitioner filed documents or motions.[8] To the extent Petitioner faults the Circuit Court for failing to rule upon his *pro se* Amended *Habeas* Petition, there is no indication that Petitioner has renewed his request to proceed *pro se* since the appointment of new *habeas* counsel (Mr. Hoslter or Mr. Gain). In consideration of the delay occurring up until the appointment of Mr. Rosenlieb as *habeas* counsel (May 3, 2016), the undersigned finds that the majority of the delay is attributable to the State. Since the date of Mr. Rosenlieb's appointment as counsel, however, it appears that Petitioner has attributed to the delay by being uncooperative with counsel, focusing his efforts upon his Rule 35 Motion, and failing to file motions or a final Amended *Habeas* Petition within in *habeas* proceedings in efforts to move the proceedings forward. Just recently, the Circuit Court conducted a status hearing (September 14, 2022) and appointed Petitioner new *habeas* counsel (Mr. Gain). Petitioner further acknowledges that following the status hearing, Petitioner filed a Motion for Recusal of Prosecutor Sorsaia. Accordingly, Petitioner's State *habeas* proceedings are ongoing and have clearly been re-activated.

Although the above delay is concerning, the record is clear that Petitioner's State proceedings are now moving forward. Even after inordinate delay, case law indicates that the federal courts should "stay its hand" when there is reliable evidence that the state action has been reactivated.[9] See Plymail, 2017 WL 4280676, * 9; also see Vreeland v. Davis, 543 Fed. Appx. 739,

---

[8] Petitioner acknowledges that "the appointment of Duane Rosenliebe was spurred by the Petitioner filing a Motion for Status Conference." (Document No. 31, p. 3.)

[9] In *Peterson v. Ames*, Case No. 3:19-cv-00126, Judge Eifert entered a Proposed Finding and Recommendation that Respondent's Motion to Dismiss be granted because "the delay justifying an excuse of exhaustion must be **ongoing**" and Petitioner's state proceeding had been reactivated. *Peterson v. Ames*, Case No. 3:19-cv-0126, Document No. 33.) United States District Judge Robert

742 (10th Cir. 2013)("[W]e did not say in [previous precedent] nor have we said anywhere else, that failure to exhaust can be excused on the basis of a delay that has already ended."); Monegain v. Carolton, 576 Fed.Appx. 598, 602 (7th Cir. 2014)("[B]ecause the delay has come to a close, the comity concerns underlying the exhaustion requirement compel the federal courts to allow the state litigation to run its course.")(quotations omitted); Slater v. Chatman, 147 Fed.Appx. 959, 960 (11th Cir. 2005)(Although there was a 14-month delay in appointing counsel, the court found no "absence of available State corrective process" where the state court process was now moving forward); Wallace v. Dragovich, 143 Fed.Appx. 413, 418 (3rd Cir. 2005)("Where, as here, previously-stalled state proceedings have resumed, we have instructed district courts to stay their consideration of habeas petitions."); Walker v. Vaughn, 53 F.3d 609, 615 (3rd Cir. 1995)("a federal court should 'stay its hand' if there is evidence that a state court action is proceeding normally or has been 'reactivate.'"); Seemiller v. Wyrick, 663 F.2d 805, 807 (8th Cir. 1981)(refusing to excuse exhaustion for past delay when there was "no reason to believe that the state court will continue to delay"); Horrell v. Downey, 2018 WL 8899717, * 4 (C.D.Ill. Oct. 16, 2018)("only an ongoing delay warrants excusing the exhaustion requirement"); Chamberlain v. Lamas, 2013 WL 4787349 (E.D.Pa. Sept. 9, 2013)(refusing to excuse exhaustion where petitioner shared responsibility for the delay and the state court had taken an active role in seeing that the state *habeas* action proceeds expeditiously as possible); Melvin v. Harlow, 2011 WL 1344591, *8 (M.D.Pa. March 16, 2011)(where recent activity had moved expeditiously, past delays totally 14 years did not excuse exhaustion). Under the circumstances where a petitioner's state proceedings are now reactivated,

---

C. Chambers stayed consideration of Respondent's Motion to Dismiss, and Judge Eifert's PF&R, pending the occurrence of the omnibus hearing scheduled for March 26, 2020. *Id.*, Document No. 43.

the "comity concerns underlying the exhaustion requirement compel the federal courts to allow the state litigation to run its course." <u>Vreeland v. Davis</u>, 543 Fed.Appx. 739, 442 (10th Cir. 2013).

The majority of the delays in the Petitioner's State *habeas* proceedings appear to be the result of the Circuit Court's failure to enter a Scheduling Order or conduct Status Conferences, and partly due to Petitioner's disagreement or lack of cooperation with appointed counsel, Petitioner's litigious action concerning his Rule 35 Motion filed in the underlying criminal action, and long periods of time where there were no filings by Petitioner or his counsel in Petitioner's *habeas* proceedings. The Circuit Court has just recently conducted a Status Hearing and appointed new *habeas* counsel and Petitioner has filed a Motion to Recuse the Prosecutor. Petitioner's *habeas* proceedings are clearly active and there is no reason to believe the delay that occurred in the above case will continue. The above action taken by the Circuit Court should result in Petitioner's State *habeas* proceeding moving forward with reasonable speed. To the extent there is future delay, Petitioner has access to the State remedy of filing a petition for writ of mandamus with the SCAWV. The record reveals that Petitioner's use of a petition for writ of mandamus has been an effective means of reactivating his case in the past. If Petitioner's State remedies are ineffective, however, Petitioner may again seek relief with this Court.[10] For the reasons stated above, the undersigned respectfully recommends that the District Court find that Petitioner's State remedies have not been clearly rendered futile or ineffective, and Petitioner be required to exhaust his State

---

[10] The undersigned notes that filing a petition for writ of *habeas corpus* with the SCAWV under its original jurisdiction is an available state remedy. West Virginia Code 53-4a-1(a) gives circuit courts and the Supreme Court of Appeals concurrent jurisdiction over *habeas corpus* petitions. There is no allegation or indication that Petitioner sought to exhaust his claims by filing an original jurisdiction *habeas* petition. Additionally, there is no allegation or indication of delay by the SCAWV.

court remedies.

**3.      Stay and Abeyance:**

In <u>Rhines</u>, the Supreme Court determined that when a State prisoner presents a mixed

petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted,

the district Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while

the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the

unexhausted claim claims and proceed with the exhausted claims. <u>Rhines v. Weber</u>, 544 U.S. 269,

275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). The Supreme Court, however, cautioned that a

"[s]tay and abeyance, if employed too frequently, has the potential to undermine" the twin

purposes of the total exhaustion requirement and the limitation period. <u>Id.</u>, 544 U.S. at 277, 125

S.Ct. at 1534. Specifically, the Supreme Court explained as follows:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging
> finality by allowing a petitioner to delay the resolution of the federal proceedings.
> It also undermines AEDPA's goal of streamlining federal habeas proceedings by
> decreasing a petitioner's incentive to exhaust all his claims in state court prior to
> filing his federal petition.

<u>Id.</u>, 544 U.S. at 277, 125 S.Ct. at 1535. Thus, a "stay and abeyance is only appropriate when the

district court determines there was good cause for the petitioner's failure to exhaust his claims first

in state court." <u>Id.</u> (noting that "if a district court dismisses a mixed petition close to the end of the

1-year period, the petitioner's chances of exhausting his claims in state court and refiling his

petition in federal court before the limitations period runs are slim."); <u>also see</u> <u>Demere v. Ballard</u>,

2013 WL 5352950 (N.D.W.Va. Sept. 24, 2013)("this procedure is only appropriate where an

outright dismissal could jeopardize the timeliness of a petitioner's collateral attack in federal

court").

Applying the Rhines standard to the facts of the instant case, the undersigned finds that a stay and abeyance is not warranted. The undersigned finds that the record does not support such a timeliness concern regarding the filing of Petitioner's Section 2254 Petition. Section 2244(d)(1)(A) provides that a Section 2254 *habeas* petition must be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[11] As this Court has already determined, the one-year statute of limitation is currently tolled by Petitioner's State *habeas* proceedings and Petitioner has escaped any running of the limitations period. (See Document No. 24, pp. 10 – 14 and Document No. 26.) Upon the conclusion of Petitioner's State *habeas* proceeding, Petitioner will have the full one year period to file his Section 2254 Petition in federal

---

[11] Title 28, United States Code, Section 2244(d)(1) provides as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

39

court.[11] Accordingly, the undersigned finds that dismissal will not jeopardize the timeliness of Petitioner's Section 2254 Petition, and he cannot at this time demonstrate good cause for his failure to present his claims to the State Courts prior to seeking federal *habeas* relief. Accordingly, the undersigned recommends that Respondent's request for dismissal (Document No. 28) be granted and Petitioner's Petition must be dismissed without prejudice.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's "Motion to Dismiss for Failure to Exhaust State Remedies" (Document No. 28), **DISMISS** without prejudice Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document Nos. 1), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

---

[11]  It is Petitioner's responsibility to file his petition correctly and timely.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same to Petitioner, who is acting *pro se*, and to counsel of record.

Dated: November 15, 2022.

Omar J. Aboulhosn
United States Magistrate Judge