## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

ALAN LANE HICKS,

                Petitioner,

v.                                      CIVIL ACTION NO.  3:21-0618

DONNIE AMES, Superintendent,

                Respondent.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Petitioner Alan Lane Hicks's Objections to the Proposed Findings and Recommendation ("PF&R") issued by Magistrate Judge Omar Aboulhosn on November 15, 2022. Pet's Objections to the PF&R, ECF No. 41; PF&R, ECF No. 37. The Court has undertaken a thorough review of the Objections and PF&R, as well as pertinent material found elsewhere in the record. For the reasons set forth below, the Court **DENIES** Petitioner's Objections (ECF No. 41) and—consistent with the factual allegations outlined in this Memorandum Opinion and Order—**ADOPTS AND INCORPORATES HEREIN** the PF&R (ECF No. 37). Accordingly, the Court **GRANTS** Respondent's Motion to Dismiss (ECF No. 28) and **DISMISSES** this action, without prejudice to Petitioner's right to renew the same following exhaustion of state court remedies.

### I. BACKGROUND

Petitioner Alan Lane Hicks was charged in the Putnam County Circuit Court of one count of first-degree murder, one count of aggravated robbery, and one count of conspiracy to commit murder. Order in the Putnam Cnty. Cir. Ct., ECF No. 18-3. Following a jury trial, Petitioner was

−1−

sentenced on October 25, 1988, to (1) life imprisonment without the possibility of parole for first-degree murder, (2) one to five years imprisonment for conspiracy to commit murder, and (3) one to ten years imprisonment for grand larceny, to run concurrently. *Id.* Following a lengthy series of proceedings in state court, Petitioner has now filed an application in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 1. The Court outlines the proceedings leading to the instant Petition below. Pet's Objections to PF&R, ECF No. 41.

### A. Rule 35 Motion

Petitioner first challenged his sentence on February 23, 1989, when he moved under West Virginia Rule of Criminal Procedure 35 to reduce his sentence of life without mercy. Mot. for Reduction of Life Without Mercy Sentence Under Rule 35, ECF No. 18-6. Having filed the motion pro se, he did not specify whether he was moving under subsection (a) to correct an illegally imposed sentence, or subsection (b) to reduce a sentence within 120 days of the sentence being imposed. *Id.*; W. Va. R. of Crim. P. 35. Petitioner cited the following facts in support of the Rule 35 motion: (1) his lack of a prior criminal record, (2) the trial records allegedly show the jury was without sufficient information to convict Petitioner of first-degree murder and impose a life sentence, (3) the jury acted illegally in not considering mitigating factors (including his lack of a prior criminal record), and (4) that legislative intent reserves a life without mercy sentence for a different "category" of murderers. Mot. for Reduction of Life Without Mercy Sentence Under Rule 35 ¶¶ 3-6, ECF No. 18-6.

The Putnam County Circuit Court did not rule on Petitioner's Rule 35 motion until approximately thirty years later. On March 15, 2013, twenty-four years after filing the Rule 35 motion, Petitioner filed a Petition for a Writ of Mandamus with the Supreme Court of Appeals of

West Virginia (SCAWV) to, *inter alia*, compel the circuit court to rule on his Rule 35 Motion. Pet. for Writ of Mandamus at 1, ECF No. 18-11. On June 4, 2013, the SCAWV summarily declined to grant such a writ. June 4, 2013 Order, ECF No. 18-12.

Six years later, on May 16, 2018, Petitioner again filed a petition for a writ of mandamus to, *inter alia*, compel a ruling on his Rule 35 motion. Writ of Mandamus, ECF No. 18-14; Rule to Show Cause, ECF No 18-13; *West Virginia v. Hicks*, No. 19-0123, 2020 WL 201222, at *2 (W. Va. Jan. 13, 2020). The SCAWV granted the petition and issued a Rule to Show Cause Order on January 10, 2019. Rule to Show Cause, ECF No 18-13. Eight days later, on January 18, 2019, the circuit court denied Petitioner's Rule 35 motion. Order Denying Rule 35 Mot., ECF No. 18-15. The circuit court found that it lacked jurisdiction to hear Petitioner's Rule 35 motion because the motion was filed 121 days after Petitioner's sentence was imposed, outside of the 120 days provided by Rule 35. *Id.* ¶ 12. However, the circuit court stated that even if the motion were timely filed, the court would deny the motion on the basis that any reduction or modification of the sentence would "unduly depreciate the seriousness" of Petitioner's crimes. *Id.* at 4. Additionally, the court explained that it had not previously issued a written ruling because the motion was untimely. *Id.* ¶ 7.

On February 12, 2019, Petitioner filed a notice of appeal as to this ruling, arguing both that his sentence was illegal and that it was illegally imposed. Pet. for Appeal at 7, ECF No. 28-15. The SCAWV issued a Scheduling Order, in which it instructed that any assignments of error in the appeal "must relate only to the circuit court's decision not to reduce the petitioner's sentence." Scheduling Order at 1, ECF No. 28-16. Petitioner, acting pro se, then filed a Petition for Appeal citing the same reasons laid out before: that he was both subject to an illegal sentence and that the sentence was imposed illegally. Pet. for Appeal, ECF No. 28-15. In response, the State argued that

Petitioner was improperly challenging the validity of his conviction, and even if he was not, denial of the Rule 35 motion was proper because the motion was filed outside of the 120-day period. Resp's Summ. Resp., ECF No. 28-17. Petitioner filed a Reply, arguing that his motion was timely filed and that, moreover, the State neglected to respond to any assignments of error laid out in the appeal. Reply to Summ. Resp., ECF No. 28-18.

The SCAWV affirmed the denial of Petitioner's Rule 35 motion on January 13, 2020. *Hicks*, 2020 WL 201222, at *4. It construed the motion as arising under subsection (b) of Rule 35 because it was labelled as a "Motion for Reduction of Sentence," and ultimately sought to reduce Petitioner's sentence. *Id.* Because the motion arose under Rule 35(b), the SCAWV determined that the circuit court had correctly denied it as untimely. *Id.* Additionally, denial was proper because Rule 35 motions are not intended to attack the validity of sentences—rather, such challenges should be raised via timely, direct appeals. *Id.* On April 20, 2020, the SCAWV denied Petitioner's Petition for Rehearing on this matter. April 20, 2020 Order, ECF No. 23-1 at 105. The United States Supreme Court also denied Petitioner's request for a writ of certiorari. Letter to Ms. Lindsay Sara See from the U.S. Supreme Ct. Clerk, ECF No. 28-21.

### B. Direct Appeal

On October 26, 1989, six months after filing his initial Rule 35 motion, Petitioner directly appealed his sentence to the SCAWV. Pet. for Appeal, ECF No. 28-3. In this appeal, Petitioner alleged that (1) the trial court's refusal to instruct the jury on self-defense deprived him of his right to a fair trial, (2) the trial court was without jurisdiction to try him for the conspiracy charge, and (3) the prosecution failed to provide evidence to support allegations made during opening statements, again depriving him of his right to a fair trial. *Id.* The SCAWV summarily denied this appeal on January 10, 1990. Order by the Supreme Ct. of Appeals, ECF No. 28-4. Petitioner did

not file a petition for certiorari in the United States Supreme Court. Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at 2, ECF No. 1.

### C. State Habeas Petition

On November 20, 1997—seven years after the denial of his direct appeal and prior to a judgment on his Rule 35 motion—Petitioner submitted a petition for a writ of habeas corpus in state court. Pet. Under W. Va. Code § 53-4A-1, ECF No. 28-6. In the initial petition, he asserted six grounds warranting habeas relief: (1) his conviction for murder was foreclosed by collateral estoppel, as it followed an acquittal for aggravated robbery; (2) the court refused to grant his request to give a self-defense instruction; (3) the prosecution failed to provide evidence for statements made during his opening statement; (4) the court gave an allegedly erroneous instruction that malice and intent can be inferred from the use of a deadly weapon; (5) the court gave an allegedly erroneous instructions on malice and premeditation; and (6) the court's failed to issue an instruction on "mercy" and counsel's failed to present any mitigating evidence. Pet. for Writ of Habeas Corpus Ad Subjiciendum, ECF No. 28-5. Petitioner's case appears to have been assigned to Judge O.C. Spaulding, who was a prosecutor in the initial case against Petitioner. Oct. 24, 1988 Order at 1, ECF No. 18-3 (noting O.C. Spaulding was the prosecuting attorney); Pet. for Writ of Habeas Corpus Ad Subjiciendum, ECF No. 28-5 (contains "Spaulding" written on the front page); Order Denying Pet's Mot. for TRO/PI, ECF No. 36-1 (signed by Judge Spaulding). The case was reassigned to Judge Joseph Reeder sometime around 2012. May 24, 2017 Hr'g Tr. 12:19-23, ECF No. 33-5.

During his state habeas proceedings, Petitioner experienced significant difficulty with both appointed counsel and with obtaining his case file. Along with his initial habeas petition, Petitioner had also filed a motion to appoint habeas counsel. Docket, ECF No. 28-8. In keeping with the pace

of Petitioner's Rule 35 proceedings, this motion was not granted until fifteen years later, when the court ordered the appointment of Mr. Shawn D. Bayliss on September 21, 2012. *Id.* Mr. Bayliss's appointment did not solve Petitioner's problems, however—Petitioner alleges that Mr. Bayliss never contacted him, though Petitioner sent two allegedly unanswered letters to Mr. Bayliss inquiring about the status of his case. Letter to Hon. J. Leslie from Alan Lane Hicks, ECF No. 36-1 at 11-12; Letters to Mr. Bayliss from Alan Lane Hicks, ECF No. 36-1 at 8-9. In a letter to the West Virginia Public Defender's Office on July 21, 2013, Mr. Bayliss inquired about a copy of the trial transcript, as it was apparently absent in Petitioner's file with the clerk's office. Letter from Shawn D. Bayliss to the W. Va. Pub. Def.'s Office, ECF No. 31-1 at 10. Accordingly, on January 16, 2013, April 19, 2013, and July 26, 2013, Mr. Bayliss moved to extend Petitioner's time to file an amended habeas petition. Docket, ECF No. 28-8.

Petitioner filed a complaint with the state bar concerning Mr. Bayliss's counsel, and on September 5, 2013, Mr. Bayliss moved to be relieved as counsel. May 24, 2017 Hr'g Tr. 4:11-18, ECF No. 33-5. Docket, ECF No. 28-8. Though the court then appointed Mr. C. Dascoli Jr. as counsel, it does not appear that Mr. Dascoli submitted any filings in this matter. Docket, ECF No. 28-8. Three years later, on April 5, 2016, Petitioner moved for a status conference. *Id.* On May 3, 2016, the Court appointed Mr. Rosenlieb to represent Petitioner and instructed that any amended petition should be filed by June 21, 2016. *Id.* Petitioner alleges he did not hear from Mr. Rosenlieb for seven months, after which Mr. Rosenlieb contacted Petitioner and asked Petitioner to fill out and return a *Losh* list. Letter to J. Reeder from Alan Lane Hicks, ECF No. 36-1 at 22-23; Letter from Duane Rosenlieb to Alan Hicks, ECF No. 31-1 at 11. Petitioner refused to fill out the *Losh* list. Pet's Objections to PF&R at 2, ECF No. 41.

–6–

On January 20, 2017, Petitioner, acting pro se, filed an Amended Habeas Petition. Pet. Under W. Va. Code § 53-4A-1 for Writ of Habeas Corpus, ECF No. 28-6; Mem. of L. in Supp. of Am. Pet. for Writ of Habeas Corpus Ad-Subjiciendum, ECF No. 28-7. The Amended Petition listed six grounds for relief, four of which were the same as those on his original 1997 habeas petition. Am. Pet. for Writ of Habeas Corpus Ad Subjiciendum, ECF No. 28-6. Grounds five and six differed from the original petition, however. Mem. in Supp. of Pet's Am. Pet. for Writ of Habeas Corpus Ad Subjiciendum at iv, ECF No. 28-7. Instead of alleging that the court erroneously instructed the jury on malice and premeditation, ground five was premised on the court's failure to provide verdict forms distinguishing the prosecution's theory of murder. *Id.* Instead of alleging the court's failure to directly instruct on "mercy" and counsel's failure to present mitigating evidence, ground six instead alleged three specific bases for ineffective assistance of counsel: counsel's failure to object to an unconstitutional malice instruction, counsel's failure to object to the prosecution's closing argument, counsel's failure to object to a remark about evidence, and failing to offer an instruction as to parole eligibility. *Id.*

Shortly after filing the Amended Petition, Petitioner once again moved to relieve appointed counsel and proceed pro se. Mot. to Remove Appointed Counsel and Proceed Pro Se, ECF No. 33-4. In this motion, Petitioner alleged that he had only received one letter from Mr. Rosenlieb since his appointment. *Id.* ¶ 3. Petitioner additionally alleged that though the order appointing Mr. Rosenlieb as counsel instructed that an amended petition should be filed by June 26, 2016, no petition had been filed as of January 20, 2017, when Petitioner finally filed his amended petition pro se. *Id.* Additionally, Petitioner notes that he was not aware of counsel requesting any extensions on filing his amended petition. *Id.*

On May 24, 2017, the circuit court held a hearing on this motion. Hr'g Tr., ECF No. 33-5. During the hearing, Mr. Rosenlieb expressed the same difficulty obtaining the court file as Mr. Bayliss—Mr. Rosenlieb reported that he had not been able to obtain a certified copy of proceeding from the clerk of the circuit court, as "only a box full of court reporter notes" could be located in relation to Petitioner's case. *Id.* 7:9-11. Mr. Rosenlieb also noted that Petitioner objected to (or perhaps was offended by) his request to fill out and send a *Losh* list. *Id.* 7:22-24, 8:1-5, 8:17-18. Additionally, Mr. Rosenlieb suggested that Petitioner could seek to get his case dismissed on the basis that the clerk's office did not have an official transcript of his trial. *Id.* 9:9-11. However, Petitioner rejected this proposal, alleging that he had "a signed, sealed copy of the original transcript" in his possession and that "there are issues that not only are going to require my case to be reversed, they're going to require it to be dismissed". *Id.* 9:15-19. Petitioner argued he did not want the case to be dismissed because of a lack of a transcript; rather, he wanted it "to be dismissed <u>because</u> of the transcript." *Id.* 9:19-21 (emphasis added).

During this hearing, Petitioner also claimed he had possession of almost his entire record, including stamped versions of subpoenas for every witness, the pretrial police report, the postmortem examination, the indictment and summons from November 1986, as well as orders for warrants and for transport. *Id.* 10:3-13, 10:15-18. He noted that after his conviction, he had successfully moved to obtain the records, and the accompanying order stated he could obtain "all" of these records. *Id.* 11:3-6.

Finally, Mr. Rosenlieb stated that he did not think Petitioner would have the ability to represent himself, even if he were allowed to have co-counsel. *Id.* 11:18-23. Petitioner then inquired about the pending Rule 35 motion, noting it needed to be resolved prior to resolution of his state habeas. *Id.* 14:1-12. Petitioner also agreed to make his copy of the record available, so

long as the court issued an order allowing him to make copies without payment. *Id.* 15:17-23. The court agreed to take these matters under advisement and issue an order. *Id.* 16:1-5.

In an order filed on May 30, 2017, Judge Reeder held Petitioner's motion to proceed pro se in abeyance but relieved Mr. Rosenlieb as counsel. May 30, 2017 Order, ECF No. 33-6. Additionally, Judge Reeder noted that (1) Petitioner wished to serve as co-counsel with any attorney appointed in the future, and (2) Petitioner was willing to copy the record if the prosecuting attorney had difficulty obtaining it, as long as the court first issued an order waiving copying fees. *Id.* Shortly thereafter, on July 17, 2017, Petitioner moved to prepare the transcripts for the May 24, 2017 hearing. Docket, ECF No. 28-8. These transcripts were not filed until January 17, 2019, almost two years later. *Id.*

On January 18, 2019, the day after the transcripts were filed, the court appointed Carl Hostler as counsel and set a status hearing on February 28, 2019, a final habeas petition deadline of July 5, 2019, a hearing on the final petition on August 16, 2019, and a deadline for the final ruling on September 6, 2019. Jan. 18, 2019 Order, ECF No. 33-2. Accordingly, the court held a video conference on February 28, 2019 in which it decided to proceed with the original deadlines set out in the January 18, 2019 Order, unless the SCAWV issued an order enjoining it from proceeding due to the pending appeal of Petitioner's Rule 35 motion. March 19, 2019 Order, ECF No. 33-3. On March 13, 2019, Petitioner allegedly sent Mr. Hostler a draft of a motion to recuse Prosecutor Mark Sorsaia, as Mr. Sorsaia had been involved in the trial of Petitioner's co-defendant in September 1988. Letter to Carl Hostler from Alan Hicks, ECF No. 41-1. Mr. Hostler, however, never filed this motion. Pet's Objections to PF&R at 5, ECF No. 41.

Sometime between his appointment and July 8, 2019, Mr. Hostler also visited Petitioner and was allegedly "extremely upset that the Petitioner refused to hand over his entire file to a man

he had just met." Pet's Reply and Objection to Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 5, ECF No. 31. Accordingly, on July 8, 2019, Mr. Hostler filed for an additional thirty days to file a final habeas petition, noting that the clerk of the Putnam County Circuit Court did not have Petitioner's trial transcript. Mot. by Alan Hicks for Another 30 Days in Which to File an Am. Habeas Pet., ECF No. 33-7. In this motion, Mr. Hostler noted that he believed the West Virginia Public Defenders' Service had the trial transcript and that counsel would make arrangements with them as soon as possible.  *Id.*

It is not clear what happened during the resulting three-year period. However, on July 21, 2022, the circuit court rescheduled a hearing set for August 16, 2022 due to a scheduling conflict, later setting it for September 14, 2022. July 21, 2022 Order, ECF No. 33-8; Pet's Surreply to Resp's Reply in Supp. of Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 5, ECF No. 36. At this hearing, Petitioner was informed that Mr. Hostler was no longer in private practice and that Jason T. Gain would represent Petitioner instead.  Pet's Surreply to Resp's Reply in Supp. of Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 5, ECF No. 36. Petitioner also moved to recuse Prosecutor Sorsaia. Mot. for Recusal of Prosecutor Mark A. Sorsaia, ECF No. 36-1 at 17.

The Court has not received any further information as to the status of these hearings or Petitioner's motion to recuse Mr. Sorsaia. However, Petitioner has since filed an exhibit with the Court in which his new counsel, Mr. Gain, describes similar difficulty accessing Petitioner's file— in a letter to Petitioner, Mr. Gain cites a motion by Respondent to compel Petitioner to provide a copy of the transcript and notes that he has only been able to view Petitioner's habeas petition. Letter from Jason Gain to Alan Hicks, ECF No. 43-1. According to the letter, the Putnam County Circuit Court set a hearing on the motion to compel for January 13, 2023. *Id.* Mr. Gain also

proposes scanning Petitioner's copy of the file at the prison, though Petitioner alleges that the administration had failed to provide a proper process to do so. Pet's Objections to PF&R at 9, ECF No. 41.

### D. Writs of Mandamus

Petitioner filed two writs of mandamus, relating to both his Rule 35 Motion and his state habeas proceedings. In the first writ of mandamus, filed on March 13, 2013, Petitioner sought to compel the court to appoint a "competent" attorney to represent him and allow for prepaid phone service with his attorney, schedule a hearing on his Rule 35 motion, and produce an investigative report and grand jury proceedings. Pet. for a Writ of Mandamus, ECF No. 28-10. Petitioner also presented the following questions:

1. Does the failure to produce the Investigation Report of Florida Detective P.L. Lingo, and the Grand Jury Transcripts violate state and federal constitutional rights to due process of law?;
2. Does the failure to adjudicate a Motion, filed under Rule 35 of the Rules of Criminal Procedure, violate Petitioner's state and federal constitutional rights to due process of law?; and
3. Is the Putnam County Circuit Court violating Petitioner's state and federal constitutional rights to due process of law by not responding to a correspondence requesting a hearing on a Rule 35 Motion and informing the Court that counsel appointed to amend his Petition for Habeas Corpus is not responding to communications from the Petitioner?

*Id.* On March 27, 2013, the SCAWV directed the Putnam County Circuit Court to respond to the petition by April 26, 2013. Scheduling Order, ECF No. 18-10. It is not clear whether the circuit court ever responded. Nonetheless, on June 4, 2013, the SCAWV refused to issue the requested writ. Order, ECF No. 18-12.

Six years later, on May 16, 2018, Petitioner filed another Petition for a Writ of Mandamus. ECF No. 28-12. In it, he asked the SCAWV to compel the circuit court to take action on both his Rule 35 motion and his state habeas petition. *Id.* He also presented the following questions:

(1) Does the failure to produce a docket sheet violate state and federal constitutional rights to due process of law?
(2) Does the failure to adjudicate a Rule 35 Motion violate petitioner's state and federal constitutional rights to due process of law?
(3) Does the failure to hold a hearing or rule on petitioner's Habeas filed in November of 1997 violate petitioner's state and federal constitutional rights?
(4) Is the Putnam County Circuit Court violating state and federal constitutional rights to due process by not transcribing the court reporter's shorthand notes after it was revealed that, with the exception of those notes, the file in this case is missing?

*Id.* The SCAWV issued a rule to show cause requiring the Putnam County Circuit Court to show why a writ should not be awarded against it. Rule to Show Cause, ECF No. 18-13. In this order, however, the SCAWV noted that the issue could be mooted by (1) issuing a ruling on Petitioner's Rule 35 Motion; and (2) ruling on Petitioner's motion to proceed pro se and if granted, ruling on the pending state habeas petition. *Id.*

On January 23, 2019, Judge Reeder responded to Petitioner's petition for a writ of mandamus and answered the four questions presented. Resp.'s Resp. to Rule to Show Cause, ECF No. 28-13. He first noted that Petitioner's Rule 35 Motion had since been ruled on, so that issue was moot. *Id.* at 6. He next noted "Petitioner has been afforded the assistance of multiple lawyers" but "has been unwilling or unable to cooperate" with them. *Id.* However, Judge Reeder argued any issue as to counsel was moot, because the circuit court had set a briefing schedule on Petitioner's habeas petition and appointed Carol Hostler as counsel. *Id.* On February 4, 2019, the SCAWV denied this Petitioner's request for a writ of mandamus as moot. Dismissal Order, ECF No. 28-14.

### E. Federal Habeas Petition

Petitioner, acting pro se, filed the instant petition under 28 U.S.C. § 2254 on November 24, 2021. ECF No. 1. In his initial petition and the supporting memorandum, Petitioner asserts the same grounds for relief as those listed in his amended state habeas petition, with the exception that he does not claim ineffective assistance of counsel via failure to offer an instruction on parole

eligibility. *Id.*; Mem. of L. in Supp. of Pet. for Writ of Habeas Corpus Ad-Subjiciendum, ECF No. 15. On November 30, 2021, Magistrate Judge Aboulhosn issued an order directing Respondent to file a limited response by January 28, 2022, as to the timeliness of the petition and attach any records pertinent to such a determination. Nov. 30, 2021 Order, ECF No. 5. Shortly thereafter, on December 9, 2021, Petitioner moved for a temporary restraining order to enjoin Respondent from (1) removing word processor from his cell or ordering it sent out of the facility; (2) refusing to prevent Petitioner from purchasing printer cartridges; and (3) refusing to allow Petitioner's word processor to be sent out for service and returned. Mot. for TRO/Preliminary Injunction with Supp. Mem. of L., ECF No. 7. In his Response, Respondent contends that a temporary restraining order was not warranted, noting that Petitioner was still able to access computers in the library, operational procedures at the prison were entitled to deference, and Petitioner had not met the standard set forth for preliminary injunctions. Resp's Resp. in Opp. to Pet's Mot. for TRO/Preliminary Injunction, ECF No. 11.

On January 6, 2022, Respondent asked that the deadline for his response as to timeliness be extended to February 28, 2022. Mot. for Extension of Time to File Resp., ECF No. 13. This motion was granted on January 7, 2022. ECF No. 14. On February 15, 2022, Respondent moved to dismiss the petition with prejudice for untimeliness and filed his limited response as to timeliness. Resp's Mot. to Dismiss with Prejudice, ECF No. 18; Resp's Ltd. Resp. Re. Timeliness and Mem. of L. in Supp. Mot. to Dismiss for Untimeliness, ECF No. 19. The Court then allowed Petitioner until April 28, 2022 to respond. Feb. 15, 2022 Order and Notice, ECF No. 20 (directing Petitioner to respond by March 28, 2022); Pet.'s Mot. for Extension of Time, ECF No. 21 (asking the Court to extend the deadline for a response to April 28, 2022); March 21, 2022 Order, ECF No. 22 (granting Petitioner's request for an extension of time). On April 22, 2022, Petitioner filed

his response to Respondent's Motion to Dismiss for Untimeliness and limited response as to timeliness. Pet's Reply to Resp's Ltd. Resp. Re. Timeliness and Resp's Mot. to Dismiss, ECF No. 23. On May 5, 2022, Magistrate Judge Aboulhosn submitted proposed findings and recommendations, recommending that the court deny Petitioner's motion for a temporary restraining order, deny Respondent's motion to dismiss for untimeliness, and refer the matter back to him for further proceedings. PF&R, ECF No. 24. No objections were filed, and the Court adopted these recommendations via a memorandum opinion and order entered on May 24, 2022. Mem. Op. and Order, ECF No. 26.

Two months later, on July 20, 2022, Respondent moved to dismiss the petition for failure to exhaust state remedies. Resp's Mot. to Dismiss for Failure to Exhaust State Remedies, ECF No. 28. In its motion to dismiss, Respondent argues that Petitioner has only exhausted the three grounds for relief he raised in his direct appeal. Resp's Mem. of Law. Supp. Mot. to Dismiss for Failure to Exhaust State Remedies at 10, ECF No. 29. Because Petitioner's federal habeas petition raises more than these three grounds for relief, it should be dismissed or at least stayed and held in abeyance pending resolution of state habeas proceedings. *Id.* at 14. On August 8, 2022, Petitioner responded to Respondent's motion to dismiss—in his Response, Petitioner presents a factual background and criticizes actions taken by Judge Reeder during the state habeas proceedings, arguing that exhaustion should be waived because the circuit court will not be able to rule in a timely or proper manner. Pet.'s Reply and Objection to Resp.'s Mot. to Dismiss for Failure to Exhaust State Remedies at 2-6, ECF No. 31. Petitioner additionally alleges that the last three years of proceedings evidence an intentional delay on part of the state court. *Id.* at 6.

On August 15, 2022, Respondent filed its Reply, arguing that any length of delay should be calculated from the date of Petitioner's Amended Petition (January 20, 2017) rather than the

date of his initial Petition (November 20, 1997). Reply in Supp. of Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 2-3, ECF No. 33. Respondent further contends that Petitioner was largely responsible for any post-2017 delay and lists actions taken by the state court in Petitioner's proceedings since that time. *Id.* at 4-8. Finally, Respondent argues that because the state court was making meaningful progress towards a resolution of Petitioner's state habeas proceedings, this was not "an extreme case" in which exhaustion should be excused. *Id.* at 9-10.

Petitioner was granted leave to file a Surreply, in which he (1) reasserts his double jeopardy concerns; (2) contends that any delay should be calculated as to the original filing of his petition; (3) seems to retract a previous claim that the prosecutor's office admitted to having a court reporter's shorthand notes; and (4) argues that he is not responsible for any delay, as he allegedly made known that he did not intend to file another amended habeas after the amended petition filed in 2017. Pet.'s Surreply to Resp's Reply in Supp. of Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 5-6, ECF No. 36. Additionally, Petitioner complains of the court's inability to provide him with a complete copy of his record and describes a series of infractions allegedly committed by Judge Reeder. *Id.* at 7. Finally, Petitioner notes that his appointed attorney, Mr. Hostler, was no longer in private practice and that another attorney would need to be appointed. *Id.*

On November 15, 2022, Magistrate Judge Aboulhosn submitted proposed findings and recommendation as to Respondent's Motion to Dismiss for Failure to Exhaust State Remedies. ECF No. 37. In the PF&R, Magistrate Judge Aboulhosn undertakes an extensive review of the entire case record, ultimately proposing that (1) the instant petition contains a mix of exhausted and unexhausted claims; (2) the length of delay should be calculated as to the filing of Petitioner's initial petition on November 20, 1997; (3) state proceedings have been reactivated; and (4) the

majority of the delay is attributable to the circuit court's failure to manage its docket, though Petitioner bears a small amount of responsibility due to his litigation decisions refusal to work with appointed counsel. *Id.* Because state proceedings had been reactivated, Magistrate Judge Aboulhosn recommended that the Court "stay its hand" and grant Respondent's motion to dismiss. *Id.* at 35-36. Additionally, Magistrate Judge Aboulhosn recommended that the Court decline to stay the instant petition and hold federal proceedings in abeyance pending a resolution in state court, as when state proceedings conclude, Petitioner will still have a full year to file a federal habeas petition. *Id.* at 38-39. Petitioner filed five objections to the PF&R, later moving for leave to supplement these objections, which the Court granted. Pet's Objections to Proposed Findings and Recommendations, ECF No. 41; Mot. for Leave of Court to Amend by Supp. Pet's Objections to PF&R, ECF No. 43. The Court addresses each of these objections below.

## II. LEGAL STANDARD

### A.  Rule 12(b)(6) Motions

Courts apply the standard set forth in Federal Rule of Civil Procedure 12(b)(6) to motions to dismiss in § 2254 proceedings. *Walker v. True*, 399 F.3d 315, 319 n.1 (4th Cir. 2005). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the facts alleged in the complaint need not be probable, the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court accepts all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."). Finally, where a party is proceeding pro se, the Court will liberally construe his pleadings and objections. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**B. Objections to PF&R**

While courts possess the wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations" of the Magistrate Judge, they must conduct a *de novo* review of those portions of the Magistrate Judge's findings "to which objection is made." 28 U.S.C. § 636(b)(1)(C). In keeping, courts need not conduct a review of factual and legal conclusions to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nor are they tasked with conducting *de novo* review of "general and conclusory" objections—rather, objections must raise specific errors in the PF&R. *McPherson v. Astrue*, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) (citing *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)) (reasoning that "vague objections to the magistrate judge's findings prevents the district court from focusing on disputed issues and

thus renders the initial referral to the magistrate judge useless"). With this framework in mind, the Court turns to a consideration of Mr. Hicks's pending objections.

### III. DISCUSSION

#### A. Petitioner's Objections to the PF&R

Petitioner's objections relate to both findings of fact and legal conclusions as set forth in the PF&R. As laid out, the Court need not review any legal or factual conclusions to which Petitioner does not object, *Thomas*, 474 U.S. at 150—however, because Petitioner is proceeding pro se, the Court will liberally construe any strictly factual objections and reexamine the legal conclusions in light of them. *Gamble*, 429 U.S. at 106. The Court, therefore, begins by addressing each objection in turn.

##### 1. Delay attributable due to lack of filing

First, Petitioner objects to the following finding:

> [i]n consideration of the delay occurring up until the appointment of Mr. Rosenlieb as habeas counsel (May 3, 2016), the undersigned finds that the majority of the delay is attributable to the State. Since the date of Mr. Rosenlieb's appointment as counsel, however, it appears that Petitioner has attributed to the delay by being uncooperative with counsel, focusing his efforts upon his Rule 35 Motion, and failing to file motions or a final Amended Habeas Petition within habeas proceedings in efforts to move the proceedings forward.

PF&R at 35, ECF No. 37. Namely, Petitioner objects to the finding that any amount of the post-2016 delay should be attributed to him, especially insofar as it is premised on his activities in Rule 35 proceedings. Pet.'s Objections to PF&R at 2-5, ECF No. 41. Petitioner argues that because he was under the impression that a resolution of his Rule 35 motion had to predate a resolution of his state habeas proceedings, any action to resolve the Rule 35 motion should not count against him. *Id.* at 4. Finally, Petitioner argues that any delay during the time he was represented by Mr.

–18–

Rosenlieb and Mr. Hostler should not be attributed to him, as the State was unable to supply either of these counsel with the record.[1] *Id.* at 4-5.

The Court agrees with the proposed finding that the vast majority of delay is attributable to the State, though Petitioner is responsible for at least a small fraction of delay during the time that he was represented by Mr. Rosenlieb. Delay may also be attributable to a petitioner where the petitioner makes a litigation decision that stalls proceedings. *Peterson v. Ames*, No. 3:19-0126, 2020 WL 2114568, at *6 (S.D.W. Va. May 4, 2020) (finding that "some of the delay" was attributable to a petitioner due to his decision to move for a new trial). As an initial matter, the Court does not discount the role the State has played in delaying proceedings. However, whether Petitioner meant to or not, his litigation decisions with respect to the Rule 35 motion did cause some delay. While Petitioner expressed to the circuit court a desire to "have [the Rule 35 motion] out of the way, whether . . . in [his] favor or not" so that he could "move that forward to another court," desire alone is not enough to shift the burden of delay. May 24, 2017 Hr'g Tr. 14:10-12, ECF No. 33-5. As reflected in the PF&R, Petitioner's litigation decisions with regard to both the Rule 35 motion and his habeas petition did contribute to the delay in his habeas proceedings.

Further, as discussed during the May 24, 2017 hearing, Petitioner was unwilling to explore an alternative approach to reducing his sentence—that is, by seeking to have his case dismissed due to the lack of a trial transcript. May 24, 2017 Hr'g Tr.9:19-21, ECF No. 33-5. Throughout the lifespan of this case, Petitioner has expressed a desire to steer the direction of his proceedings.

---

[1] Petitioner also objects to any suggestion in the PF&R that he received more than one correspondence from Mr. Rosenlieb. Pet.'s Objections to PF&R at 2, ECF No. 41. While the PF&R notes that Petitioner received "additional correspondence" beyond the November 14, 2016, letter from Mr. Rosenlieb, it appears that Petitioner received this letter, and this letter only, from Mr. Rosenlieb. PF&R at 18 n.3, ECF No. 37. The Court takes this into account in considering the other objections.

Mot. to Remove Appointed Counsel and Proceed Pro Se, ECF No. 33-4. No court has denied him this ability. However, in making certain litigation decisions and pursuing his preferred theory of the case—that is, obtaining a sentence reduction because of the transcript, rather than the lack thereof—Petitioner has contributed to the delay in his case.

Regarding Petitioner's alleged lack of cooperation with counsel, this Court has found a delay was partially attributable to a petitioner where he "consistently acted without regard to his attorneys (e.g., by filing pro se motions while represented) and asked the circuit court judge several times to permit him to proceed pro se, while other times requesting that habeas counsel be appointed." *Harper v. Ballard*, No. 3:12-00653, 2013 WL 285412, at \*8 (S.D.W. Va. Jan. 24, 2013). The Court understands that Petitioner has had a frustrating experience with counsel. However, the record supports a finding that Petitioner has made it more difficult for counsel to represent him since the appointment of Mr. Rosenlieb.

Take, for example, Petitioner's refusal to return the requested *Losh* list to Mr. Rosenlieb or to come to an agreement as to how to supply what he had of the record to Mr. Hostler. May 24, 2017 Hr'g Tr. 7:22-24, 8:1-5, 8:17-18, ECF No.33-5; Pet.'s Reply and Objection to Resp.'s Mot. to Dismiss for Failure to Exhaust State Remedies at 5, ECF No. 31. Petitioner alleges that he did not complete the *Losh* list because he "believed Mr. Rosenlieb did not possess the case file." Pet's Objections to PF&R at 2, ECF No. 41. Yet two pages after acknowledging this belief, Petitioner criticizes Mr. Rosenlieb for not telling Petitioner as such in his November 14, 2016 letter. *Id.* at 4. Petitioner cannot have it both ways—he cannot feign ignorance as to the status of his case file and refuse to take a helpful action, filling out the *Losh* list, based on the knowledge that his case file was missing.

Petitioner also could have remedied his counsel's issues obtaining the record. He argues as to his willingness to provide the documents he possessed to the State. Objections to PF&R at 3, ECF No. 41. However, he does not appear to extend this same courtesy to his own counsel. Without diminishing the State's role in misplacing Petitioner's records, the Court cannot ignore that Petitioner was unwilling to supply his own counsel with crucial, otherwise unavailable files in his possession. Petitioner also argues that the State should bear the totality of delay because the circuit court "could have prevented this problem" by issuing an order allowing him to copy his file. *Id.* at 5. Yet this argument can easily be turned around—delay due to the lack of a record could have been easily remedied by Petitioner handing his case file to Mr. Hostler or informing Mr. Rosenlieb that he had key documents in his possession.

Finally, Petitioner argues that though the PF&R asserts that there was no action in Petitioner's habeas proceedings between May 30, 2017 and January 19, 2019, Petitioner had filed a Motion for Oral Argument and Hearing on His Rule 35 Motion on June 13, 2017 and a Motion to Prepare Transcripts on July 13, 2017. Pet's Objections to PF&R at 3, ECF No. 41. However, Petitioner fails to inform the Court how these filings relate to his habeas, not his Rule 35, proceedings. And even if these filings did qualify as actions in his habeas proceedings, they would do little to change the thrust of the proposed finding. That is, under the more generous view, Petitioner would have taken no actions in his habeas proceedings from July 13, 2017 rather than May 30, 2017. The resulting delay is still somewhat attributable to Petitioner, as he took no other action for over a year-and-a-half to move his case along.

For these reasons, the Court finds in keeping with the PF&R. While the majority of the delay is attributable to the State, Petitioner has contributed to the delay through his own litigation

decisions, unwillingness to work with counsel to share necessary files, and failing to move his habeas proceedings along between July 13, 2017 and January 19, 2019.

> ### 2.   Whether Petitioner "sat on his rights"

Second, Petitioner objects to the following finding:

> the record reveals long periods of time where there were no filings by Petitioner or his counsel. Although the Circuit Court is ultimately responsible for managing its docket, a petitioner cannot sit on his rights and then expect to benefit from his lack of diligence. The Circuit Court had a history of acting with reasonable promptness in addressing motions filed by Petitioner, yet Petitioner often waited years before complaining that he was dissatisfied with counsel or any delay. If Petitioner was either dissatisfied with counsel, or did not consent to the delay, Petitioner should have immediately notified the Circuit Court of such and requested action by the Circuit Court.

PF&R at 34, ECF No. 37. Namely, Petitioner argues that he did not sit on his rights—rather, he alleges his oral motion for a hearing on his Rule 35 motion, oral request for an order waiving copying fees, and written motion to prepare transcripts constitute requests for action from the circuit court. Pet's Objections to PF&R at 6, ECF No. 41. Petitioner also alleges that he did not want to complain about Mr. Hostler's performance, as an order by Judge Reeder had previously accused Petitioner of being "unable to work with counsel." *Id.* at 7. Finally, he argues that the State should bear the total burden of delay, as it required Petitioner to supply his own record. *Id.* at 8.

Many of these arguments are the same as those addressed in Objection 1, discussed in Section III.A.1., *supra*. For example, as to the frequency of filings, Petitioner has not pointed to any filings relating to his habeas case made between July 13, 2017 and January 19, 2019, which still constitutes a period in which Petitioner did not seek to move proceedings along. As to the loss of Petitioner's file, the Court reiterates that Petitioner did not take any steps to mitigate this problem for his own counsel, further contributing to the delay. And while Petitioner may have hesitated to complain about Mr. Hostler's performance in light of Judge Reeder's comments, such hesitation does not tip the scales of attributable delay. Regardless of whether Petitioner was

concerned about angering Judge Reeder, his decision not to seek alternate counsel, or even find a way to more effectively work with Mr. Hostler, was just that—his decision.

Finally, Petitioner outlines instances in which he informed the circuit court that he was unhappy with counsel, specifically with Mr. Bayliss and Mr. Dascoli. *Id.* at 7. The PF&R does not attribute delay to Petitioner during this time period. Rather, as seen in the passage highlighted in Objection 1, the PF&R proposes that only delay following Mr. Rosenlieb's appointment is attributable, in part, to Petitioner. PF&R at 35, ECF No. 37. As such, Petitioner's experiences with Mr. Bayliss and Mr. Dascoli are not relevant to the instant analysis.

### 3.   Support for the allegation that the prosecutor blocked relief

Third, Petitioner objects to the PF&R's finding that there are no facts alleged "to support Petitioner's conclusory claim that the prosecutor 'blocked relief.'" PF&R at 21 n.4, ECF No. 37. Petitioner argues that he did provide such a factual basis, citing (1) his initial Petition for Writ of Habeas Corpus Ad Subjiciendum with "Spaulding" written on it; and (2) an order denying his Motion for Temporary Restraining Order/Preliminary Injunction, filed alongside his Petition for Writ of Habeas Corpus Ad Subjiciendum, that was signed by Judge O.C. Spaulding. Pet's Objections to PF&R at 8, ECF No. 41 (citing ECF Nos. 28-5 and 36-1).

The record supports Petitioner's contention that his habeas case was assigned to Judge O.C. Spaulding, the individual who had prosecuted Petitioner's initial charges. *See* ECF Nos. 28-5, 36-1. While such a conflict of interest is concerning, it does not automatically follow that Judge Spaulding blocked relief. Nor does it appear that Petitioner ever sought to remedy this conflict of interest by asking that his case be transferred to a different judge—rather, Petitioner's record is completely devoid of filings from November 20, 1997 to August 20, 2012, the time in which Judge Spaulding oversaw Petitioner's case. Docket, ECF No. 28-8. Further, Petitioner suggests that it

was the transfer of his case from Judge Spaulding that spurred his filing of another motion to appoint counsel in 2012. Pet's Surreply to Resp's Reply in Supp. of Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 2, ECF No. 36. The Court, like Magistrate Judge Aboulhosn, notes that the delay from 1997 until 2012 is largely the fault of the circuit court's failure to control its docket. PF&R at 34, ECF No. 37. But Petitioner took no action in fifteen years besides filing a petition and moving to appoint counsel one time. Docket, ECF No. 28-8. In the absence of evidence beyond the mere presence of a conflict of interest, the Court agrees that Petitioner has not supported the contention that the prosecutor blocked relief.

4.   Delay due to the appointment of counsel

Fourth, Petitioner objects to the proposed finding that it was reasonable for some delay to accompany the appointment of new counsel. Namely, Petitioner points to the statements that:

> [t]he appointment of five new attorneys as habeas counsel also resulted in some delay. It is reasonable that some delay would occur as a result of the appointment of new counsel. Each replacement attorney needs time to obtain and review the file and become familiar with the facts and applicable law.

PF&R at 34, ECF No. 37. Petitioner argues that such a delay would not be reasonable here—because the file was missing, there was nothing for each new attorney to review. Pet's Objections to PF&R at 9, ECF No. 41. However, this objection misses the point. That there was no file to review does not change the fact that any new appointed attorney would need additional time to try to locate the file, review whatever case materials they could, meet with Petitioner, and become familiar with any facts and applicable law. A missing file does not erase the delay inherent in appointing a new attorney to a case.

Construing the objection liberally, the Court recognizes that Petitioner may be arguing that none of the delay resulting from the appointment of new counsel should be attributed to him. While the PF&R acknowledges that "[d]elays caused by court-appointed counsel may be attributed to the

–24–

State where 'the petitioner has not personally caused the delays nor condoned them,'" it proposes that "Petitioner has attributed to the delay by being uncooperative with counsel." PF&R at 33-34, 35, ECF No. 37 (quoting *Gardner v. Plumley*, No. 2:12-cv-03386, 2013 WL 5999041, at *6 (S.D.W. Va. Nov. 12, 2013)). The Court agrees that Petitioner should not be held responsible for any delay during the time he was represented by Mr. Bayliss and Mr. Dascoli. PF&R at 35, ECF No. 37. However, as discussed above, Petitioner was at best unhelpful during Mr. Rosenlieb's and Mr. Hostler's tenure as appointed counsel. *See* Section III.A.1., *supra*. The delay due to the appointment of these counsel, therefore, is not solely attributable to the State.

### 5.   Whether state habeas proceedings have been "reactivated"

Fifth, Petitioner objects to Respondent's characterization that state proceedings were "reactivated" in January 2019.[2] Objections to PF&R at 10, ECF No. 41; PF&R at 20, ECF No. 37 (quoting Reply in Supp. of Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 8-9, ECF No. 33). Courts have declined to waive exhaustion where state proceedings have been "reactivated." *Plymail v. Mirandy*, No. 3:14-6201, 2017 WL 4280676, at *9 (S.D.W. Va. Sept. 27, 2017) (citing *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995)). State proceedings have been "reactivated" where meaningful progress has been made in them—for example, where amended petitions have been filed, court-appointed counsel are actively engaged, and state courts are actively holding hearings on the case. *Id.*; *see also Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986) (waiving exhaustion requirement where almost three years had passed without the petitioner's counsel securing a hearing); *Simmons v. Garman*, No. 16-4068, 2017 WL 2222526 at

---

[2] Puzzlingly, Petitioner's objections on this issue quote the PF&R's summary of and quotations from Respondent's argument as to state proceedings being "reactivated." Objections to PF&R at 10, ECF No. 41. Because the instant objections were filed pro se, the Court liberally construes them to object to the proposed finding that state proceedings have been reactivated.

*3 (E.D. Pa. Feb. 14, 2017) (finding that state proceedings were progressing normally where the court had established deadlines and set a hearing date).

Petitioner points out that state proceedings have not adhered to the deadlines set forth in the January 18, 2019 order, which called for a final petition to be filed by July 5, 2019, scheduled a hearing on the final petition on August 16, 2019, and promised a ruling by September 6, 2019. Objections to PF&R at 10, ECF No. 41. While state proceedings are admittedly off-schedule, that does not prevent them from being "reactivated." Rather, the state proceedings here have checked the boxes described in *Plymail*—an amended petition has been filed (albeit not a final amended petition); hearings and status conferences have been scheduled, including one in January 2023; and appointed counsel is engaged in the matter, as evidenced by the letter attached to Petitioner's supplement to his objections. Letter from Jason Gain to Alan Hicks, ECF No. 43-1. Moreover, the state court and the parties are actively working to deal with the lack of a record, a serious issue that has plagued Petitioner's proceedings up to this point. *Id.*

In this objection, Petitioner also quotes "derisive statements" by Judge Reeder in the January 18, 2019 Order, claiming that these statements indicate an ongoing scheme to contaminate the record with baseless accusations. Objections to PF&R at 10-11, ECF No. 41. Namely, Petitioner objects to the characterization that delays in the matter stem from Petitioner's "inability to work with counsel." *Id.* at 10 (quoting January 18, 2019 Order, ECF No. 33-2). Petitioner ultimately accuses Respondent, and later Magistrate Judge Aboulhosn, of "parroting" these misstatements in their filings. *Id.* at 10, 12. Again, the Court acknowledges Petitioner's frustration with the slow pace of proceedings. However, the role of this Court is to determine whether exhaustion can be excused, not to quibble with Judge Reeder's findings of fact. Moreover, the Court reiterates the standard set forth in the PF&R—while courts need only consider "the face of

the petition and any attached exhibits" in reaching its decision, they may also consider exhibits and matters of public record, such as documents from prior state court proceedings." PF&R at 22-23, ECF No. 37 (citing *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009) and *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)). The PF&R in no way parrots proceedings from state court. Rather, it reflects an extensive and independent review of the record—a record that, in addition to orders from Judge Reeder, contains letters between Petitioner and counsel, hearing transcripts reflecting Petitioner's own words, and Petitioner's filings in this matter. Following its own thorough and independent review of the record, this Court finds in accordance with the PF&R.

### B.  Whether the delay was inordinate and unjustified

With Petitioner's objections in mind, the Court examines (1) whether Petitioner's state habeas proceedings have been subject to inordinate and unjustified delay, thereby warranting waiving the exhaustion requirement; and in the alternative, (2) whether it is appropriate to stay the petition and hold federal proceedings in abeyance while Petitioner exhausts his habeas proceedings in state court. While the Court finds that the delay was inordinate, it does not warrant waiving the exhaustion requirement where state habeas proceedings have been reactivated. Nor it is appropriate to stay the petition and hold federal proceedings in abeyance pending exhaustion of Petitioner's state habeas claims, as Petitioner will not be barred from filing another federal habeas petition upon resolution of his state proceedings.

Petitioner does not dispute that his habeas petition contains a mix of exhausted and unexhausted claims. Instead, he argues that the exhaustion requirement should be excused following the inordinate delay of habeas proceedings in state court. Pet's Reply and Objection to Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 6, ECF No. 31. 28 U.S.C. § 2254(b)(1) provides that a state prisoner's petition for a writ of habeas corpus shall not be granted

unless the petitioner "has exhausted the remedies available in the courts of the State." The Supreme Court has encouraged a "rigorously enforced total exhaustion rule" to (1) protect the state judiciary's role in enforcing federal law, (2) avoid disrupting state judicial proceedings, and (3) ensure that factual records are developed prior to being presented to the federal courts for review. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). However, because the exhaustion rule is one of comity, it should be applied flexibly. *Patterson v. Leeke*, 556 F.2d 1168, 1170 (4th Cir. 1977).

Section 2254(b)(1)(B) excuses the exhaustion requirement where "there is an absence of available [s]tate corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant." In keeping, the Fourth Circuit has recognized several circumstances under which federal courts should excuse exhaustion. *See Farmer v. Cir. Ct. of Md. for Balt. Cnty.*, 31 F.3d 219, 223 (4th Cir. 1994) ("There is . . . authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance"). Namely, "[s]tate remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." *Ward v. Freeman*, 46 F.3d 1129, at *1 (4th Cir. 1995) (unpublished table decision); *see also Walkup*, 2005 WL 2428163, at *3 ("[A]n inordinate and unjustified delay may excuse the petitioner from the traditional statutory requirement of exhaustion.").

When determining whether a delay is inordinate and unjustified such it warrants excusing the exhaustion requirement, courts look to the following factors: (1) the length of the delay, *see Farmer*, 31 F.3d at 223; (2) the significance of any action that has been taken in state court, *see Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004); and (3) the party responsible for the complained-of delay, *see Matthews v. Evatt*, 51 F.3d 267 n.1 (4th Cir. 1995) (unpublished decision). If an inordinate delay is found, the burden shifts to the State to provide justification for

the delay and to demonstrate why the petitioner should still be required to exhaust his state court remedies before seeking relief in federal court. *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994).

    1)  <u>Length of Delay</u>

Petitioner does not—nor has he reason to—object to the proposed finding that the length of delay was inordinate and should be calculated as to the date of his initial filing. PF&R at 28-30, ECF No. 37. Given that Petitioner filed his state habeas petition on November 20, 1997, state habeas proceedings have been ongoing for almost twenty-five years. While there is not a "talismanic number of years or months" that renders a delay inordinate, *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir. 1990), a twenty-five-year delay undoubtedly qualifies as "inordinate" under any reasonable definition. *See Ames*, 2020 WL 2114568, at *4 (listing cases). The Court agrees with the PF&R that the length of delay weighs in favor of Petitioner. PF&R at 30, ECF No. 37.

    2)  <u>Significance of Actions Taken in State Court</u>

Next, the Court examines the degree of progress made in state court. A federal court should excuse the exhaustion requirement where there is "no indication that a state court case is achieving meaningful progress or nearing disposition." *Plymail*, 2017 WL 4280676, at *9 (citing *Burkett v. Cunningham*, 826 F.2d 1208, 1218 (3d Cir. 1987)). However, exhaustion should not be waived "[w]here a state court case is proceeding normally . . . even if the case's progress . . . is slow." *Id*. (citing *Burkett*, 826 F.2d at 1218). Rather, a federal court should "stay its hand" if it appears that the state court is proceeding normally or that proceedings have been "reactivated." *Ames*, 2020 WL 2114568, at *5 (quoting *Plymail*, 2017 WL 4280676, at *9).

The Court, like Magistrate Judge Aboulhosn, is concerned by the glacial pace of Petitioner's state habeas proceedings. PF&R at 35, ECF No. 37. However, as discussed in Section III.A.5, *supra*, state proceedings have been "reactivated" such that the Court must factor comity

–29–

into its decision. And where proceedings are no longer experiencing a delay, comity requires that courts allow state litigation to run its course. *Monegain v. Carlton*, 576 F. App'x 598, 602 (7th Cir. 2014); *Horrell v. Downey*, No. 17-cv-02306-CSB, 2018 WL 8899717, at *4 (C.D. Ill. Oct. 16, 2018) (holding that only an ongoing delay warrants excusing the exhaustion requirement). As this Court and others have held, federal courts should stay their hand where state proceedings are ongoing, even where these proceedings have previously been subject to an unreasonable delay. *Peterson v. Ames*, No. 3:19-00126, 2019 WL 8643741, at *15 (S.D.W. Va. Oct. 30, 2019), *report and recommendation adopted*, 2020 WL 2114568 (listing cases).

      3)  <u>Party Responsible for the Delay</u>

      The Court's findings are in keeping with the PF&R. While part of the delay stemmed from Petitioner's litigation decisions and his relationship with counsel, the Court agrees with the proposed finding that the bulk of these delays are solely attributable to the State. PF&R at 33-35, ECF No. 37. In over thirty years of proceedings, the State has misplaced Petitioner's case files, assigned Petitioner's habeas case to a judge with a conflict of interest, delayed ruling on his Rule 35 motion for approximately thirty years, and failed to expeditiously appoint habeas counsel, to name a few. Though the State is responsible for the bulk of delay, this factor does not weigh solely in favor of Petitioner, as a portion of the post-2016 delay is owed to him. *Peterson*, 2020 WL 2114568, at *6 (citing *Evatt*, 1995 WL 149027, at *1 n.1)). In so finding, the Court refers to its previous discussions of the party responsible for delay in Sections III.A.1 and III.A.2, *supra*. The three factors, therefore, do not weigh in favor of excusing the exhaustion requirement.

      While waiving exhaustion is not warranted, the Court is not ignorant of the possibility that delays could resume at a future point in Petitioner's state proceedings. This is not unlikely given that Petitioner's case remains pending in the same court that has already allowed proceedings to

drag on for literal decades. Should delays persist in Petitioner's state habeas proceedings for any inordinate period of time, the Court will again entertain the argument that exhaustion of state remedies should be excused. For now, the Court concludes "the need for a rule encouraging exhaustion of all federal claims" outweighs Petitioner's arguments in favor of excusing exhaustion. *Rose*, 455 U.S. at 519.

### C.  Whether the petition warrants an abeyance

Petitioner does not object to the proposed finding that staying the petition and holding it abeyance is not warranted. Pet's Reply and Objection to Resp's Mot. to Dismiss for Failure to Exhaust State Remedies at 6, ECF No. 31. However, since Petitioner has filed his objections pro se, the Court construes them liberally and reexamines the PF&R's finding as to a stay and abeyance. Staying a habeas petition is appropriate where "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines v. Weber*, 544 U.S. 269, 278 (2005). However, "a stay and abeyance should be available only in limited circumstances." *Id.* at 277-78. For example, stay and abeyance are not warranted where a petitioner would not be barred from returning to federal court after exhausting claims in state court. *See, e.g.*, *Gordon v. Cartledge*, No. 8:10-CV-2578-MBS-JDA, 2011 WL 4549390, at *5 (D.S.C. Sept. 30, 2011) (holding that stay and abeyance was unnecessary where dismissing the petition would not "unreasonably impair" a petitioner's ability to return to federal court); *Dreyfuse v. Pszczokowski*, No. 3:16-06717, 2017 WL 758950, at *2 (S.D.W. Va. Feb. 27, 2017) (finding that stay and abeyance was not needed where a petitioner still had the entire one-year statute of limitations to file a federal habeas petition). Petitioner has ample time to file a federal habeas petition upon resolution of his state habeas proceedings. A stay and abeyance, therefore, is not warranted.

## IV. CONCLUSION

For the reasons above, the Court **ADOPTS AND INCORPORATES** herein the findings and recommendation of the Magistrate Judge. ECF No. 37. Accordingly, the Court **GRANTS** Respondent's Motion to Dismiss for Failure to Exhaust State Remedies (ECF No. 28) and **ORDERS** that the petition be dismissed, without prejudice.

Additionally, the Court **GRANTS** Petitioner leave to refile this action in this Court after he has exhausted his remaining claims before the state court. However, Petitioner's right to refile this action will be subject to the statute of limitation requirements contained in the habeas statute. *See* 28 U.S.C. § 2244(d)(1) and (2); *Slack v. McDaniel*, 529 U.S. 473, 487 (2000) ("A petition filed after a mixed petition has been dismissed under *Rose v. Lundy* before the district court adjudicated any claims is to be treated as 'any other first petition' and is not a second or successive petition."); *In re Goddard*, 170 F.3d 435, 438 (4th Cir. 1999) (listing cases that do not include petitions dismissed for failure to exhaust state remedies when determining whether a subsequent petition is "second or successive").

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge Aboulhosn, counsel of record, and any unrepresented parties.


ENTER:        March 30, 2023


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE